EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pablo Colón Chévere, Elba Rivas Maldonado y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>        Recurridos<br><br>           v.<br><br>José M. Class Otero, José H. Ortiz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>        Peticionarios<br>-------------------------------<br>Julio Morales Rodríguez, Carmen Carrión López y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>        Recurridos<br><br>           v.<br><br>José M. Class Otero, José H. Ortiz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>        Peticionarios | Certiorari<br><br>2016 TSPR 232<br><br>196 DPR ____ |

Número del Caso: CC-2016-588

Fecha: 15 de noviembre de 2016

Tribunal de Apelaciones:

    Región Judicial de Arecibo-Fajardo-Aibonito, Panel XII

Oficina de la Procuradora General:

    Lcda. Margarita Mercado Echegaray
    Procuradora General

    Lcda. Miriam Alvarez Archilla
    Procuradora General Auxiliar

Abogado de la Parte Recurrida:

    Lcdo. Miguel Morales Fajardo

Materia: Daños y Perjuicios: Responsabilidad extracontractual del Estado por daños causados por terceros. Deber general del Estado de velar por la seguridad pública y evitar la criminalidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pablo Colón Chévere, Elba Rivas Maldonado y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>    Recurridos<br><br>        v.<br><br>José M. Class Otero, José H. Ortiz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>    Peticionarios | CC-2014-588 | |
| Julio Morales Rodríguez, Carmen Carrión López y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>    Recurridos<br><br>        v.<br><br>José M. Class Otero, José H. Ortiz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>    Peticionarios | | |

Opinión del Tribunal emitida por la Jueza Presidenta Oronoz Rodríguez.

En San Juan, Puerto Rico, a 15 de noviembre de 2016.

El presente caso nos brinda la oportunidad de establecer los contornos de la responsabilidad civil del Estado Libre Asociado de Puerto Rico (ELA) en el contexto del deber general de velar por la seguridad pública y evitar la criminalidad. En particular, examinamos la controversia de si la Policía de Puerto Rico, y por ende el

ELA, es responsable civilmente por los daños causados por un tercero durante la comisión de un acto delictivo. Veamos.

I

Los hechos que dan lugar al caso de autos se remontan al año 1998, cuando ocurrió un trágico accidente durante la celebración de unas carreras clandestinas de vehículos de motor en el Municipio de Morovis.

Desde el año 1990, todos los fines de semana se celebraban carreras clandestinas de vehículos de motor en distintas áreas del Municipio de Morovis, principalmente en la Carretera 567 del Barrio San Lorenzo. La magnitud del evento era tal que contaba con la participación de un público de entre 200 a 300 personas. Las carreras clandestinas eran de conocimiento general y, lo que es más, contaban con el apoyo indirecto del Alcalde del Municipio. Tanto así que la Policía Municipal tenía instrucciones específicas de no intervenir con las carreras. Además, el Alcalde había iniciado la construcción de una pista aledaña a la Carretera 567 que era utilizada como estacionamiento por el público que acudía a las carreras clandestinas. La Policía de Puerto Rico tenía conocimiento del grave problema de las carreras clandestinas en el lugar donde eventualmente ocurrieron los hechos que motivan este caso.

El 18 de julio de 1998, aproximadamente a las 4:00 de la tarde, la Policía de Puerto Rico recibió información respecto a que en la Carretera 567 del Barrio San Lorenzo

de Morovis se realizarían unas carreras clandestinas. Ese día se celebraban también las fiestas patronales del Municipio, actividad a la que acudía un público de entre 4,000 a 5,000 personas.[1] Según declaró el Teniente William Feliciano, entonces Comandante Auxiliar del Distrito de Morovis para la Policía de Puerto Rico, ante la querella recibida solicitó ayuda a una patrulla de la Policía Municipal porque "[la Policía Estatal] est[aba] cort[a] [de] recurso[s]" y acudió al lugar señalado.[2] Indicó que, al llegar:

> no habían ningunas . . . carreras, toda vez que lo que había era una que otra persona allí, pues, pasando tal vez el día, porque [sic.] también allí hay un río que [sic.] muchas personas, pues, acostumbran a pasar el día allí . . . [A]l notar que no existía, en ese momento, ningún tipo de evento, pues decid[ió] entonces regresar nuevamente al personal a sus demarcaciones. . . y le indi[có] al agente que estaba a cargo de querellas que . . . [cuando no estuviera] atendiendo querellas, . . . bajara [sic.] y le diera seguimiento al área de San Lorenzo.[3]

Es decir, según expuso el Teniente Feliciano, al no identificar actividad ilícita alguna, éste se marchó del lugar e instruyó a otro agente estatal a dar seguimiento de la situación cuando no tuviese que atender querellas, tarea principal que le correspondía ejecutar el día de los hechos.

---

[1] Véase, *Transcripción de la prueba*, Apéndice, pág. 400.
[2] Íd., págs. 423-424.
[3] Íd., págs. 423-424. Conviene mencionar que las citadas declaraciones del Teniente Feliciano surgen de la transcripción de la vista celebrada por el Tribunal de Primera Instancia para dilucidar la negligencia de las partes, no así de las determinaciones de hechos del foro de instancia.

Sin embargo, ese mismo día, cerca de las 6:00 de la tarde, se celebraron las carreras clandestinas en el lugar denunciado. Allí, el Sr. José M. Class Otero, quien participaba de éstas, perdió el control del vehículo que conducía a exceso de velocidad, impactó a varios espectadores y provocó la muerte de cinco personas. Entre las personas fallecidas se encuentran los jóvenes Juan Pablo Colón Rivas y Omar Morales Carrión.

Por tales hechos, durante el año 1998 los familiares de las cinco personas fallecidas presentaron dos demandas contra el señor Class Otero, el ELA, el Municipio de Morovis y otros demandados desconocidos. No obstante, según solicitado por los entonces demandantes y sin oposición de las partes demandadas, en el 2007 el Tribunal de Primera Instancia dictó sentencia de desistimiento sin perjuicio en ambos casos.[4]

En el año 2008, los familiares de los jóvenes Colón Rivas y Morales Carrión[5] (en conjunto, los demandantes) presentaron nuevamente –esta vez por separado– dos demandas por daños y perjuicios contra el señor Class Otero y el

---

[4] Véase, *Sentencia del Tribunal de Apelaciones* KLAN 2013-01710-KLAN 2013-01711, Apéndice, págs. 2-3.

[5] En particular, el Sr. Pablo Colón Chévere, la Sra. Elba Rivas Maldonado, la Sra. Zuheil Colón Rivas, la Sra. Damaris Arce Rodríguez y el menor Joe Weslee Colón Arce reclamaron el resarcimiento de los daños y perjuicios que presuntamente sufrieron a consecuencia de la muerte del joven Juan Pablo Colón Rivas. Véase, Demanda Núm. C DP 2008-0123, Apéndice, pág. 48. De otro lado, el Sr. Julio Morales Rodríguez, la Sra. Carmen Carrión López, la Sra. Frances B. Nieves Laureano y el menor Jomar Alberto Morales Nieves reclamaron por los daños y perjuicios relacionados a la muerte del joven Omar Morales Carrión. Véase, Demanda Núm. C DP 2008-0124, Apéndice, pág. 62.

ELA.[6] En lo pertinente a la controversia de autos, los demandantes alegaron que la muerte de Colón Rivas y de Morales Carrión ocurrió a consecuencia de la negligencia del ELA, particularmente de la Policía de Puerto Rico, al no tomar las medidas necesarias para evitar la celebración de las carreras clandestinas.[7] Por su parte, el ELA contestó la demanda, negó las alegaciones de responsabilidad en su contra y argumentó, entre otros asuntos, que los demandantes asumieron el riesgo de lo ocurrido y que el responsable de los hechos es el señor Class, tercero por el cual el ELA no responde.

Luego de múltiples trámites procesales, el Tribunal de Primera Instancia llevó a cabo las correspondientes vistas para dilucidar la negligencia y los daños alegados.[8] En cuanto al asunto de la negligencia, por parte de los demandantes testificaron el Sr. Juan R. Ortega Álamo, quien a la fecha de los hechos fungía como Director del Departamento de Recreación y Deportes del Municipio de

---

[6] De otra parte, la demanda incluyó también como demandados al Sr. José Ortiz Sandoval, propietario del vehículo que provocó el accidente, y al Departamento de Transportación y Obras Públicas (DTOP). No obstante, posteriormente los demandantes desistieron de la reclamación contra el señor Ortiz Sandoval, por lo cual el foro de instancia decretó el archivo sin perjuicio de la demanda en cuanto a él. Véase, *Sentencia Parcial*, Apéndice, págs. 284-285 y 984-985. Asimismo, la acción contra el DTOP fue desestimada por prescripción. Véase, *Sentencia del Tribunal de Apelaciones* KLAN 2013-01710-KLAN 2013-01711, Apéndice, págs. 13-14. Nótese que esta vez no se incluyó como parte demandada al Municipio de Morovis.

[7] Vale señalar que, además de los demandantes del caso de epígrafe, los familiares de las otras tres personas fallecidas durante los hechos narrados presentaron también sus respectivas demandas por separado. No obstante, estos casos no fueron consolidados en el foro de instancia. Ello, a pesar de que el ELA solicitó la consolidación de los cinco casos.

[8] La vista de negligencia de ambos casos fue consolidada, mientras que la vista de daños se llevó a cabo de forma separada.

Morovis; los señores Walter Cortés Pérez y Wilson Torres Morales, quienes para la fecha de los hechos trabajaban como Policía y Teniente, respectivamente, de la Policía Municipal; la Sra. Carmen Dolores Carrión López, quien era la madre del joven Morales Carrión y, además, a la fecha de los hechos era también Policía Municipal; y la Sra. Frances Nieves, viuda del joven fenecido Morales Carrión. Por su parte, el ELA presentó como testigo al Teniente Feliciano.

Tras varios eventos procesales, el foro de instancia emitió las correspondientes sentencias en ambos casos y declaró con lugar la acción incoada por los demandantes.[9] En cuanto al señor Class, dictó sentencia en rebeldía en su contra. En lo relativo al ELA, razonó que "la Policía de Puerto Rico actuó negligentemente al dejar de cumplir con una de sus funciones básicas . . . de velar porque en las carreteras de Puerto Rico se observen los límites de velocidad y [que éstas] no se utilicen para realizar carreras de competencia".[10] Añadió que la Policía Estatal incurrió en responsabilidad al no tomar medidas de seguridad adecuadas para proteger la vida de los ciudadanos a pesar de tener pleno conocimiento de que en el lugar de los hechos ocurrirían las carreras clandestinas.

El foro de instancia adjudicó un cincuenta por ciento (50%) de responsabilidad al ELA y un cincuenta por ciento (50%) de responsabilidad al señor Class Otero e impuso la

---

[9] Ambas sentencias son esencialmente iguales.
[10] Véase, *Sentencias del Tribunal de Primera Instancia*, Apéndice, págs. 628 y 711.

cuantía máxima de daños que permite la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 LPRA sec. 3074 et seq., conocida como la "Ley de Pleitos contra el Estado" (Ley de Pleitos contra el Estado) en cada caso.[11] El ELA presentó una oportuna moción de reconsideración que fue declarada no ha lugar.

Así las cosas, el ELA presentó dos recursos de apelación ante el Tribunal de Apelaciones que fueron posteriormente consolidados. Sostuvo, en síntesis, que erró el foro de instancia al determinar que el ELA fue negligente ya que de la prueba surge que la Policía de Puerto Rico tomó acciones para evitar los daños. Hizo particular referencia al caso Ramos Oppenheimer v. Leduc, 103 DPR 342 (1975), en el cual este Tribunal se negó a imponer responsabilidad al ELA por unos hechos similares a los del caso de autos. De otro lado, arguyó que el Tribunal de Primera Instancia abusó de su discreción al conceder a

---

[11] En particular, la indemnización otorgada a los familiares del joven Colón Rivas por angustias mentales fue la siguiente: (a) Sr. Pablo Colón Chévere, $120,000; (b) Sra. Elba Rivas Maldonado, $120,000; y (c) Sra. Zuheil Colón Rivas, $60,000. Ahora bien, teniendo en cuenta las limitaciones de cuantía que establece la Ley de Pleitos contra el Estado, dispuso que el cumplimiento de la sentencia se podría satisfacer de la siguiente forma: (a) Sr. Pablo Colón Chévere, $60,000; (b) Sra. Elba Rivas Maldonado, $60,000; y (c) Sra. Zuheil Colón Rivas, $30,000. El foro de instancia desestimó la demanda en cuanto a las demandantes Damaris Arce Rodríguez y el menor Joe Weslee Colón ya que éstos no comparecieron a la vista de daños. De otro lado, la indemnización otorgada a los familiares del joven Morales Carrión por angustias mentales fue la siguiente: (a) Sr. Julio Morales Rodríguez, $120,000; (b) Sra. Carmen Carrión López, $120,000; (c) Sra. Frances D. Nieves Laureano, $20,000; y (d) menor Jomar Alberto Morales Carrión, $40,000. Empero, considerando las limitaciones de cuantía que establece la Ley de Pleitos contra el Estado, dispuso que el cumplimiento de la sentencia se podría satisfacer de la siguiente forma: (a) Sr. Julio Morales Rodríguez, $60,000; (b) Sra. Carmen Carrión López, $60,000; (c) Sra. Frances D. Nieves Laureano, $10,000; (d) menor Jomar Alberto Morales Carrión, $20,000.

los demandantes una cuantía excesiva de daños emocionales y angustias mentales.

El Tribunal de Apelaciones emitió una sentencia mediante la cual confirmó al Tribunal de Primera Instancia. Concluyó que de la prueba presentada ante el foro de instancia surge que la Policía de Puerto Rico no tomó medidas de seguridad y prevención adecuadas para proteger la vida de los ciudadanos y fue negligente en el ejercicio de sus deberes. En cuanto al segundo error señalado, determinó que no intervendría con las cuantías impuestas por el foro de instancia en ausencia de abuso de discreción.

Inconforme, el ELA acudió ante este Tribunal mediante recurso de *certiorari* y, en esencia, reiteró los planteamientos esgrimidos ante los foros inferiores. Expedido el recurso y con el beneficio de las comparecencias de ambas partes, procedemos a resolver.

II

A.

En nuestro ordenamiento jurídico, aquél que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Artículo 1802 del Código Civil, 31 LPRA sec. 5141. En innumerables ocasiones hemos expresado que, en aras de que exista responsabilidad al amparo del citado Artículo 1802 del Código Civil, supra, es indispensable que ocurra una acción u omisión, un daño y la correspondiente relación

causal entre el daño y la conducta culposa o negligente. Véanse, García v. ELA, 163 DPR 800 (2005); Administrador v. ANR, 163 DPR 48 (2004); Valle v. ELA, 157 DPR 1 (2002); Elba ABM v. UPR, 125 DPR 294 (1990); Reyes v. Sucn. Sánchez Soto, 98 DPR 305 (1970). Recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios. García v. ELA, supra.

La responsabilidad por negligencia se caracteriza por la concurrencia de los siguientes elementos: (a) la existencia de una obligación o, al menos, de un deber general, reconocido por el Derecho, que exige que los sujetos ajusten sus actos a un determinado tipo de conducta para la protección de los demás contra riesgos irrazonables y (b) que el agente del daño haya obrado sin ajustarse a semejante tipo de conducta. J. Puig Brutau, Fundamentos de Derecho Civil, Tomo II, Volumen III, 88, Barcelona, Ed. Bosch, 1983.

El factor de la previsibilidad es parte fundamental de la responsabilidad por culpa o negligencia. Elba ABM v. UPR, supra, pág. 309. El grado de previsibilidad en cada caso varía, dependiendo del estándar de conducta que sea aplicable. Hernández v. Televicentro, 168 DPR 803 (2006). Respecto a qué constituye un resultado razonablemente previsible, hemos expresado que "el deber de previsión no se extiende a todo peligro imaginable que concebiblemente

pueda amenazar la seguridad . . . sino a aquél que llevaría a una persona prudente a anticiparlo". Hernández v. La Capital, 81 DPR 1031, 1038 (1960).

Además, para que exista responsabilidad civil, es necesario que concurra un nexo causal entre la acción u omisión culposa o negligente y el daño producido al reclamante. Elba ABM v. UPR, supra. En nuestra jurisdicción rige la doctrina de la causalidad adecuada, conforme a la cual "la ocurrencia del daño en cuestión era previsible dentro del curso normal de los acontecimientos. En otras palabras, causa es la condición que ordinariamente produce el daño, según la experiencia general". Íd., pág. 310.

Finalmente, debemos recordar que en nuestro ordenamiento rige la doctrina de negligencia comparada. Quiñones López v. Manzano Pozas, 141 DPR 139 (1996). Conforme a ésta, la negligencia concurrente o contribuyente del demandante sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximirle totalmente de responsabilidad. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, pág. 410. Esta doctrina requiere que el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, establezca el porcentaje de responsabilidad o negligencia que corresponda a cada parte y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad. Íd. Así, para determinar la negligencia

que corresponde a cada parte en casos de negligencia comparada es necesario "analizar y considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante". Íd., pág. 412.

B.

Aunque por lo general la responsabilidad civil extracontractual surge de actos u omisiones propias, el Artículo 1803 del Código Civil, 31 LPRA sec. 5142, dispone que la obligación de reparar un daño a otro es exigible también "por los de aquellas personas de quienes se debe responder". Conforme al citado Artículo, el Estado responde extracontractualmente en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular por aquellos daños causados por sus funcionarios cuando actúan dentro del ámbito de sus funciones. Íd. Véase, además, Galarza Soto v. ELA, 109 DPR 179 (1979).

Claro está, en virtud de la doctrina de inmunidad soberana, se requiere el consentimiento del Estado para que puedan instarse procedimientos judiciales en su contra. Guardiola Álvarez v. Depto. de Familia, 175 DPR 668 (2009); Berríos Román v. ELA, 171 DPR 549 (2007). Así, los límites de la responsabilidad civil del Estado se rigen por las disposiciones de la Ley de Pleitos contra el Estado. En lo pertinente, ésta permite que los ciudadanos demanden al ELA por las actuaciones culposas o negligentes de sus empleados, funcionarios o agentes en el desempeño de sus

funciones y actuando en capacidad oficial. 32 LPRA sec. 3077. El Artículo 2 de esta Ley expone que:

> [c]uando por tal acción u omisión se causaren daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado, la indemnización por *todos los daños y perjuicios que causare dicha acción u omisión no podrá exceder de la suma de ciento cincuenta mil dólares ($150,000).* Si de las conclusiones del Tribunal surgiera que la suma de los daños causados a cada una de las personas excede de ciento cincuenta mil (150,000) dólares, el Tribunal procederá a distribuir dicha suma entre los demandantes, a prorrata, tomando como base los daños sufridos por cada uno. Cuando se radique una acción contra el Estado por daños y perjuicios a la persona o a la propiedad, el Tribunal ordenará, mediante la publicación de edictos en un periódico de circulación general, que se notifique a todas las personas que pudieran tener interés común, que deberán comparecer ante el Tribunal, en la fecha dispuesta en los edictos, para que sean acumuladas a los fines de proceder a distribuir la cantidad de ciento cincuenta mil (150,000) dólares entre los demandantes, según se provee en esta Ley. Íd. (Énfasis suplido).

Nótese que la citada disposición enfatiza que ante la ocurrencia de una misma acción u omisión culposa o negligente del ELA que cause daños a más de una persona, la indemnización por *todos* los daños no podrá exceder la cuantía de $150,000. Íd.

### C.

Anteriormente hemos evaluado la responsabilidad civil que deriva de las actuaciones criminales de terceros en el contexto de instituciones o comercios particulares. Hemos puntualizado que, como norma general, "no existe un deber de proteger a otras personas de actos criminales de terceros". Santiago v. Sup. Grande, 166 DPR 796 (2006). No

obstante, hemos resuelto a modo de excepción que existen situaciones en las que, en atención a las características particulares de ciertas instituciones y de los servicios que éstas proveen, un demandado puede responder por dichos actos. Íd.

Por ejemplo, dispusimos que las instituciones educativas universitarias, los hoteles, los hospitales y los centros comerciales tienen una relación particular con sus estudiantes, huéspedes, pacientes y clientes, respectivamente, "que los obliga a ofrecerles un grado de seguridad adecuado y razonable que procure garantizar su bienestar". Santiago v. Sup. Grande, supra, pág. 809.[12] En tales contextos, hemos expresado que:

> la difícil determinación de cuándo existe un nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias. Íd.

De otro lado, en Negrón de León v. Orozco, 113 DPR 712 (1983), impusimos responsabilidad al ELA por las actuaciones negligentes de la Policía al "no proveer la necesaria seguridad y protección al ciudadano querellante . . . para impedir el previsible resultado de

---

[12] Véanse, Elba ABM v. UPR, 125 DPR 294 (1990) (sobre las instituciones educativas universitarias); Pabón Escabí v. Axtmayer, 90 DPR 20 (1964)(sobre los hoteles); Hernández v. La Capital, 81 DPR 1031 (1960)(sobre los hospitales); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1993) (sobre los centros comerciales); y Santiago v. Sup. Grande, 166 DPR 796 (2006) (sobre los establecimientos comerciales que no cualifican como centros comerciales).

violencia en que perdió la vida" a manos de un policía en medio de una discusión en el propio cuartel. Al así resolver, prestamos particular atención a la naturaleza de los cuarteles de la policía y al ambiente de seguridad que allí debe imperar. Íd.

Asimismo, evaluamos un cuadro fáctico similar al de autos en Ramos Oppenheimer v. Leduc, supra. En aquella ocasión, un joven falleció tras ser atropellado por un vehículo de motor que competía en unas carreras clandestinas en el aeropuerto de Santa Isabel. Sus familiares demandaron, entre otros, al ELA por no evitar la ocurrencia de la carrera clandestina que produjo la muerte del joven. Este Tribunal se negó a imponer responsabilidad al ELA por entender que el accidente se debió principalmente a la imprudencia del joven occiso, quien además estaba cometiendo un acto delictivo al entrar ilícitamente a la pista del aeropuerto. También, allí estimamos que:

> [n]o tiene validez el argumento de que a la policía se le avisó y no fue a detener la competencia. Para aquella época el puesto de la policía de Santa Isabel tenía 16 policías. Con ese personal se cubrían tres turnos de ocho horas diarias, incluyendo vacaciones. Durante las horas del día había sólo dos policías disponibles en servicio -uno en el retén y otro en la calle. Para la fecha de los hechos se celebraban en Santa Isabel unas primarias. Constituían dichas primarias una actividad lícita, que atrae considerable número de personas y en donde se necesitaba la policía. Pero independientemente de esa situación específica, la verdad es que *el Estado no puede tener policías presentes, a todas horas, en todos los lugares en Puerto Rico en que es ilegal, pero físicamente posible, celebrar una*

*carrera de automóviles*. También la policía, al recibir llamadas tiene que atender éstas según su importancia y según sus medios. Para ello tiene que ejercer discreción el oficial a cargo del puesto. Los medios de la policía no son infinitos. El oficial no puede adivinar los acontecimientos futuros. No abusó de su discreción al decidir que las primarias tenían prioridad. Íd., págs. 343-344 (Énfasis suplido).

De otra parte, desde el punto de vista del Derecho comparado, exponemos la forma en que España ha analizado controversias análogas a la de autos. A esos efectos, el Tribunal Supremo español atendió un caso en que el demandante pretendía imputar responsabilidad civil a la Policía Nacional al no haber intervenido para evitar un robo ocurrido en una joyería.[13] El foro judicial de España se negó a imputar responsabilidad al Estado en ese contexto. Explicó que, aunque es muy probable que la intervención policiaca hubiese evitado la consumación del robo, en los supuestos de comportamiento omisivo, no basta con que la intervención del Estado hubiera impedido la lesión, pues esto conduciría a una ampliación irrazonable y desmesurada de su responsabilidad patrimonial. Por el contrario, el Tribunal Supremo de España estimó que es necesario "que haya algún otro dato en virtud del cual quepa objetivamente imputar la lesión a dicho comportamiento omisivo [del Estado]; y ese dato . . . sólo puede ser la existencia de un deber jurídico de actuar".[14]

---

[13] S. del 31 de marzo de 2009 Núm. 2350/2009 II Repertorio de Jurisprudencia, pág. 6268.
[14] Íd.

Por otro lado, conviene examinar a modo ilustrativo el tratamiento que otras jurisdicciones han dado al asunto. Así, destacamos que en Argentina también "se ha afianzado una tendencia restrictiva al reconocimiento de la responsabilidad estatal por omisión del ejercicio de potestades administrativas de control".[15] En casos similares al de autos, la Corte Suprema de Justicia de la Nación, máximo foro judicial argentino, ha expresado que el deber genérico de proveer seguridad no se traduce automáticamente en la existencia de responsabilidad.[16] Esto, pues exigir que el Estado evite todo daño a sus ciudadanos "requeriría una previsión extrema que sería no sólo insoportablemente costosa para la comunidad, sino que haría que se lesionaran severamente las libertades de los mismos ciudadanos a proteger".[17]

Asimismo, aunque el caso de autos se rige por el Derecho Civil, también a modo ilustrativo destacamos que las jurisdicciones de Estados Unidos, como norma general, se han negado a imponer responsabilidad civil al Estado por no evitar la criminalidad en ausencia de una relación

---

[15] P. Perrino, La responsabilidad del Estado por la omisión del ejercicio de sus funciones de vigilancia, Rev. Der. UM (2011), disponible                                                         en: http://revistaderecho.um.edu.uy/wpcontent/uploads/2013/10/Perrino-La-responsabilidad-del-estado-por-la-omision-del-ejercicio-de-sus-funciones-de-vigilancia.pdf

[16] Íd., pág. 60 (citando a la Corte Suprema de Justicia de la Nación (CJSN), causa Cohen, Eliazar c. Río Negro, Provincia de y otros s/daños y perjuicios, Fallos: 329:2088 Fallos: 332:2328).

[17] Íd., (citando a la CSJN, causa Mosca, Hugo Arnaldo c. Provincia de Buenos Aires (Policía Bonaerense) y otros s/daños y perjuicios, Fallos: 330:653).

especial ("special relationship") entre policía y víctima.[18]

Esto es, se requiere una relación particular y distinguible

entre los organismos policiacos y la víctima con tal de

hallar responsable al Estado ante las actuaciones

criminales de un tercero.[19] Uno de los casos más importantes

en cuanto a esta materia, Schuster v. City of New York, 5

N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265 (1958), evaluó

la situación de un ciudadano que fue asesinado mientras

_____

[18] Véanse, por ejemplo, South v. Maryland, 59 U.S. (18 How.) 396 (1856); Peck v. United States, 470 F. Supp. 1003 (S.D.N.Y. 1979); Commercial Union Ins. Co. v. City of Wichita, 217 Kan. 44, 536 P.2d 54 (1975); Riss v. City of New York, 22 N.Y.2d 579, 240 N.E.2d 860, 293 N.Y.S.2d 897 (1968). Véase además, en general, Harvard Law Review Association, Police Liability for Negligent Failure to Prevent Crime, 94 Harv. L. Rev. 821 (February, 1981)(donde se analiza y critica el tratamiento jurisprudencial norteamericano del tema que nos ocupa).

[19] Se pueden identificar varios cuadros fácticos o categorías de hechos que tienen lugar en situaciones como las que nos ocupan, a saber:

> The first and narrowest category consists of cases in which the plaintiff is harmed as a consequence of his abetting the police, often as an informer or witness. Courts have no difficulty in finding a police duty of reasonable protection in these cases, as the police are considered to have taken affirmative action that placed the plaintiff in peril.
> [. . .]
> In the second category of cases police extend express promises of protection to specific individuals. Courts generally hold that law enforcement officers have a duty to provide the promised protection.
> [. . .]
> The third category consists of situations in which the police are aware of a danger to a specific individual, but have neither jeopardized the plaintiff through their affirmative acts nor promised him protection. . . . [C]ourts rarely impose a duty of police protection.
> [. . .]
> In the fourth class of cases, police are aware of a narrowly defined and readily identifiable source of danger to the public, but cannot reasonably foresee a specific victim. The paradigmatic example is a drunken driver whom the police do not arrest even after being made aware of his inebriation. Rarely in these cases do courts recognize a duty of protection.
>
> In the final category of cases the police fail to provide protection from a more general threat, such as a "crime wave." . . . In either situation, courts are highly unlikely to find a duty of protection running to individual members of the public. Harvard Law Review Association, supra, págs. 825-827.

ayudaba a la policía a arrestar a un individuo que había delinquido. El Tribunal de Apelaciones de Nueva York determinó que el Estado era responsable civilmente en tal situación y expresó al respecto que:

> the public (acting in this instance through the City of New York) owes a special duty to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals, once it reasonably appears that they are in danger due to their collaboration. Íd., pág. 269.

Uno de los principales fundamentos de la discutida norma norteamericana es evitar que los foros judiciales interfieran inadecuadamente con la discreción de la policía respecto a cómo disponer y canalizar sus recursos. Harvard Law Review Association, Police Liability for Negligent Failure to Prevent Crime, 94 Harv. L. Rev. 821 (February, 1981). Asimismo, la norma general en cuestión pretende prevenir la imposición de cargos excesivos al Estado a consecuencia de la criminalidad e impedir un congestionamiento excesivo de los foros judiciales. Íd.

A la luz de las normas y principios antes expuestos, pasemos a evaluar qué factores y criterios deben regir la imposición de responsabilidad a la Policía de Puerto Rico, y por ende al ELA, en el contexto del deber general de proveer seguridad a la población y evitar la criminalidad.

D.

Según hemos expresado anteriormente, "[e]l incremento de la violencia, el reto del criminal a la paz y sosiego del pueblo y la creciente probabilidad de que una persona

sea víctima de un atentado contra su vida, su libertad o su propiedad" es un serio problema social en tiempos modernos. Estremera v. Inmobiliaria Rac, Inc., 109 DPR 852, 856 (1980). El fenómeno de lo criminal es un asunto complejo. Sin lugar a dudas, se trata de un problema social importante y su atención es principalmente responsabilidad del Estado, "única entidad con los recursos y la fuerza necesaria para mantener la paz y la majestad de la Ley". Íd. Ahora bien, el Estado no es un garante absoluto de la seguridad pública y, por lo mismo, no puede ser responsable civilmente por todas las actuaciones criminales que la Policía no pueda evitar.

En atención a lo anterior resolvemos que, si bien la Policía de Puerto Rico tiene un deber general de velar por la seguridad pública, ese deber por sí solo no es suficiente para imputar responsabilidad civil al ELA. En este tipo de casos, el juzgador o juzgadora debe hacer un análisis profundo que tome en consideración la totalidad de las circunstancias particulares del escenario que tiene ante sí.

Entre los criterios que se deben tomar en consideración a la hora de evaluar la alegada negligencia del ELA en el ejercicio de su deber de evitar la comisión de actos delictivos se encuentran: (1) la naturaleza del hecho delictivo; (2) la recurrencia del acto criminal en el lugar de los hechos; (3) el conocimiento o la certeza que, como cuestión de hecho, tenía la Policía de Puerto Rico

respecto a que el acto criminal ocurriría; (4) la posibilidad de evitar la ocurrencia del delito; (5) los recursos con que contaba la Policía de Puerto Rico para operar; (6) otras necesidades que atender; (7) las gestiones realizadas para evitar el acto delictivo; y (8) la existencia de una relación previa o especial entre la víctima y la Policía. Ninguno de estos factores por sí solo es suficiente para tomar una determinación sobre el asunto que nos ocupa. Por el contrario, éstos deben evaluarse de forma integral, junto a las demás circunstancias que se planteen caso a caso. Claro está, una vez examinada la totalidad de las circunstancias e identificada la existencia de un deber particular y exigible junto a su incumplimiento, procede evaluar el caso conforme a los principios generales de responsabilidad civil en nuestro ordenamiento.

Resuelto lo anterior, pasemos a determinar si a la luz de los hechos particulares del caso de autos y conforme a los criterios expuestos, el ELA debe responder civilmente por los daños ocasionados a los demandantes.

### III

En el presente caso, según destacamos anteriormente, el señor Class perdió el control de un automóvil que conducía a exceso de velocidad mientras participaba de unas carreras clandestinas. Así, impactó a un grupo de espectadores que participaban de la actividad ilícita, entre los que se encontraban los jóvenes Colón Rivas y

Morales Carrión, quienes fallecieron a consecuencia del accidente. Los foros inferiores concluyeron que tanto el señor Class como el ELA son responsables solidariamente por los daños sufridos por los demandantes, familiares de Colón Rivas y Morales Carrión. Ello ya que, a pesar de tener conocimiento de que las carreras clandestinas se llevarían a cabo, la Policía de Puerto Rico no ejerció adecuadamente su deber de garantizar la seguridad pública y evitar la ocurrencia de actos delictivos.

Tras un examen minucioso del expediente del caso y de la transcripción de la prueba oral, encontramos que los foros inferiores erraron al así resolver. A la luz de los criterios esgrimidos y de la norma aquí pautada, resolvemos que en el contexto que nos ocupa la Policía de Puerto Rico no actuó de forma negligente. Veamos.

En primer lugar, aunque las carreras clandestinas ocurrían recurrentemente en el lugar de los hechos, era sumamente difícil para la Policía de Puerto Rico sorprender a las personas durante la comisión del acto delictivo. Esto pues, según declaró el Teniente Feliciano, había una única ruta por la cual se podía llegar al lugar y ciertas personas avisaban a los corredores de forma que, cuando llegaba la Policía, las carreras se detenían y el público se dispersaba.[20] Así, las posibilidades de evitar la ocurrencia del hecho delictivo mediante la intervención policiaca eran mínimas.

---

[20] Véase, *Transcripción de la prueba oral*, Apéndice, pág. 428.

De otro lado, el día de los hechos se celebraban también las fiestas patronales del Municipio de Morovis, las cuales aglomeraban de 4,000 a 5,000 personas.[21] La mayoría de los recursos y esfuerzos policiacos estaban, pues, asignados legítimamente a tal actividad.[22] Según declaró el Teniente Feliciano, al recibir la querella sobre las carreras clandestinas, "[la Policía Estatal] est[aba] cort[a] [de] recurso[s]".[23]

Aun así, del expediente del caso de autos se desprende que el Teniente Feliciano, al recibir información relacionada a que se celebrarían las carreras clandestinas, acudió al lugar denunciado, pero no se topó con actividad ilícita alguna. Ante ello, se marchó del lugar e instruyó a otro agente estatal a dar seguimiento de la situación cuando no tuviese que atender querellas, tarea principal que le correspondía ejecutar el día de los hechos.

Asimismo, de la prueba presentada ante el foro de instancia no se desprende una relación particular entre la Policía de Puerto Rico y los jóvenes Morales Carrión y Colón Rivas de la cual pudiese emanar un deber distinguible o especial de proveer seguridad. Finalmente, en este caso, tiene particular relevancia el que los jóvenes Colón Rivas y Morales Carrión estaban participando voluntariamente de la actividad delictiva por cuya ocurrencia se pretende

---

[21] Íd., pág. 400.
[22] Íd., pág. 433.
[23] Íd., págs. 400 y 423-424.

responsabilizar al ELA. No podemos avalar tal curso de acción.

En fin, la totalidad de las circunstancias del caso de autos no nos permite concluir que la Policía de Puerto Rico y, por ende, el ELA actuó de forma negligente. Huelga advertir además que, en el contexto del presente caso, imponer responsabilidad al ELA implicaría intervenir con una decisión discrecional administrativa respecto a cómo y a dónde la Policía de Puerto Rico debe asignar sus recursos.

De otro lado, los foros inferiores erraron al no imponer un porcentaje de negligencia comparada a los demandantes. Los jóvenes Colón Rivas y Morales Carrión incurrieron en negligencia contributiva a la ocurrencia de los hechos. Sin lugar a dudas, al acudir a unas carreras clandestinas, éstos se colocaron en una situación de peligro e incurrieron en negligencia que contribuyó a la cadena de eventos que culminó con su muerte. Ante ello, procede imponerles el porcentaje de responsabilidad que corresponda y reducir la indemnización de los demandantes de conformidad con esa distribución de responsabilidad. Véase, H.M. Brau del Toro, op. cit.[24]

---

[24] Explica Brau del Toro que:

> [l]a negligencia concurrente de una persona que resulta lesionada o muerta en un accidente es imputable a sus causahabientes que reclamen, ya por la acción patrimonial hereditaria del occiso o *ya por su acción personal*, por daños propios derivados de la muerte o de las lesiones sufridas por el perjudicado. H.M. Brau del Toro, Los daños

IV.

Por los fundamentos que anteceden, se revoca el dictamen recurrido y se desestima la causa de acción por daños y perjuicios en contra del ELA. Se devuelve el caso al Tribunal de Primera Instancia para que, conforme a la doctrina de negligencia comparada, adjudique el porcentaje de responsabilidad correspondiente a los jóvenes Omar Morales Carrión y Juan Pablo Colón Rivas y ajuste las cuantías adeudadas por el señor José M. Class Otero de acuerdo con lo aquí resuelto.

Maite D. Oronoz Rodríguez
Jueza Presidenta

y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, pág. 415. (Énfasis suplido).

Véase, además, Miranda v. ELA, 137 DPR 700, 716 (1994) (donde expresamos que "en los casos en los cuales los codemandantes sean los causahabientes, parientes o terceros de un perjudicado, que incurrió en negligencia, sus compensaciones se reducirán en esa proporción").

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pablo Colón Chévere, Elba Rivas Maldonado y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>　　　Recurridos<br><br>　　　　　v.<br><br>José M. Class Otero, José H. Ortiz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>　　　Peticionarios | CC-2014-588 |
| Julio Morales Rodríguez, Carmen Carrión López y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>　　　Recurridos<br><br>　　　　　v.<br><br>José M. Class Otero, José H. Ortiz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>　　　Peticionarios | |

SENTENCIA

En San Juan, Puerto Rico, a 15 de noviembre de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca el dictamen recurrido y se desestima la causa de acción por daños y perjuicios instada en contra del Estado Libre Asociado de Puerto Rico. Se devuelve el caso al Tribunal de Primera Instancia para que, conforme a la doctrina de negligencia comparada, adjudique el porcentaje de responsabilidad que corresponde a los jóvenes Omar Morales Carrión y Juan Pablo Colón Rivas y ajuste las cuantías adeudadas por el Sr. José M. Class Otero de conformidad con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre con el resultado y hace constar la siguiente expresión:

> La Jueza Asociada señora Pabón Charneco concurre con el resultado anunciado por una Mayoría del Tribunal. A pesar de entender que los foros inferiores erraron al imputarle responsabilidad civil al Gobierno de Puerto Rico, le parece fútil acudir a un potpurrí de derecho comparado para resolver la controversia de marras. En lugar de emitir una Opinión para idear un estándar intricado de los ocho (8) pasos, aplicaría la norma jurídica anunciada en *Ramos Oppenheimer v. Leduc*, 103 DPR 343 (1975), para resolver el caso de autos. Tal y como reconoce la Opinión que antecede, los hechos de ese caso son análogos a los que analizamos en el caso de epígrafe. Bastaba con emitir una Sentencia y aplicar ese precedente judicial en lugar de aventurarnos a exponer las normas y principios de otras jurisdicciones en este tema para engendrar un estándar poco práctico e innecesario.

El Juez Asociado señor Rivera García emitió una Opinión Disidente, a la cual se une el Juez Asociado señor Estrella Martínez.

Juan Ernesto Dávila Rivera<br>
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pablo Colón Chévere; Elba Rivas Maldonado y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>José M. Class Otero; José H. Ortíz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros<br><br>Peticionarios<br><br>------------------------<br><br>Julio Morales Rodríguez y Carmen Carrión López y la Sociedad Legal de Gananciales compuesta por ambos y otros<br><br>Recurridos<br><br>v.<br><br>José M. Class Otero; José H. Ortíz Sandoval, Estado Libre Asociado de Puerto Rico, Policía de Puerto Rico y otros y otros<br><br>Peticionarios | CC-2014-0588 | Certiorari |

**Opinión Disidente emitida por el Juez Asociado señor RIVERA GARCÍA a la cual se une el Juez Asociado señor ESTRELLA MARTÍNEZ**

En San Juan, Puerto Rico, a 15 de noviembre de 2016.

A la luz del Derecho y los principios generales de responsabilidad civil contenidos en nuestro ordenamiento jurídico, disiento. Distinto a lo que resuelve una Mayoría de este Tribunal, la Policía de Puerto Rico, y por ende el

Estado, es responsable por los daños causados por un tercero en unas carreras clandestinas que por décadas, tanto el Municipio de Morovis como la Policía de Puerto Rico, tenían pleno conocimiento sobre su celebración. Ello, por entender que eran enteramente previsibles los hechos ocurridos en este caso. Al igual que el foro apelativo intermedio, considero que la Policía de Puerto Rico no previno adecuadamente ni ejerció acciones afirmativas para evitar los daños ocasionados. Veamos.

## I

Desde el año 1990, todos los fines de semana se celebraban carreras clandestinas de vehículos de motor en distintas áreas del Municipio de Morovis. De la propia Opinión Mayoritaria se desprende que "la magnitud del evento *era tal* que contaba con la participación de un público de entre 200 a 300 personas (…) *y lo que es más*, contaban con el apoyo indirecto del Alcalde del Municipio. *Tanto así* que la Policía Municipal tenía instrucciones específicas de no intervenir con las carreras".[25] Ello, porque según los testimonios de la Sra. Carmen D. Carrión López, retirada de la policía municipal, y del Sr. Walter Cortés Pérez, intervenir con los corredores "afectaba la imagen y los planes políticos del alcalde".[26]

Esto coincide con las determinaciones de hecho que consignó el Tribunal de Primera Instancia en su sentencia. Procedo a destacar, entre otras, las siguientes: (1) a

---

[25] Opinión Mayoritaria, pág. 2. (Énfasis nuestro).
[26] Véase *Sentencia del Tribunal de Apelaciones*, KLAN 2013-01710, pág. 8.

partir de los años 90 hasta la fecha del accidente, dichas carreras clandestinas **se efectuaban con gran frecuencia** los fines de semana: viernes, sábado y especialmente los domingos; (2) el evento, indirectamente **apoyado por el Municipio** de Morovis, se convirtió por años en uno tradicional y multitudinario en el que se conglomeraban entre 200 a 300 personas; (3) el arraigo en el pueblo era tal que la Policía Municipal tenía **instrucciones de no intervenir** con los corredores y el Alcalde construyó una pista de carreras aledaña al puente que nunca se terminó, pero que se utilizaba por el público como estacionamiento y donde se instalaban kioscos para el estipendio de bebidas y refrigerios, entre otros. Durante las Fiestas Patronales era más común la venta de comida, bebidas, y refrigerios frente o cerca de la pista clandestina. Ciudadanos se reunían y se congregaban a ver las carreras clandestinas a modo de un evento deportivo legítimo; (4) la Policía de Puerto Rico tenía **pleno conocimiento del grave problema y el peligro** que representaba por muchos años las carreras clandestinas (hecho delictivo) en la carretera 567, en el Bo. San Lorenzo, no sólo para los participantes y el público espectador, sino para los vecinos y los conductores a los cuales se les impedía el paso por la referida vía pública.[27]

Surge también del expediente que el testigo Wilson Torres Morales, quien se destacaba como policía municipal

---

[27] *Íd.*

de dicho Municipio, declaró que había presentado una propuesta o plan al comandante de distrito y a los supervisores de la Policía de Puerto Rico para trabajar con la situación de las carreras clandestinas que se realizaban en el barrio San Lorenzo. Sin embargo, dicho plan **nunca se llevó a cabo** previo al accidente. Otro de los testigos presentados fue el teniente Feliciano Calderón. Este testificó que para la fecha del accidente se le notificó que en el referido barrio se estaban realizando unas carreras clandestinas. Sin embargo, expresó que ello **era habitual** casi todos los domingos. Estos testimonios confirman que las carreras clandestinas que se realizaban en ese lugar eran de conocimiento general de todo el pueblo, incluyendo la Policía y el propio Alcalde. Antes del accidente la Policía de Puerto Rico se limitó a expedir, ocasionalmente, multas de tránsito a los observadores de las carreras clandestinas.

Cónsono con lo anterior y contrario a la teoría que pretende promulgar la Opinión Mayoritaria, es forzoso concluir que lo ocurrido ese fatídico día pudo haberse evitado, pues era previsible que ocurriera tan lamentable incidente. La prueba presentada así lo confirma. Esto reafirma que la Policía de Puerto Rico tenía conocimiento de la celebración de las carreras clandestinas que se llevaban a cabo en dicho lugar y no tomó las medidas de seguridad necesarias para atender la situación y detener o al menos prevenir la celebración de estas. Resulta más que

evidente que ante estas circunstancias la Policía tenía el deber de evitar que las mismas continuaran ocurriendo. Ello, en vista de que los agentes y funcionarios del orden público tienen el deber ministerial de prevenir, descubrir e investigar los delitos.[28] Por lo tanto, considero que fue correcta la determinación del Tribunal de Primera Instancia y del foro apelativo intermedio respecto a que la Policía de Puerto Rico, mediante la omisión de sus deberes, fue negligente y en consecuencia, responde solidariamente por los daños ocasionados.

Por otra parte, la Opinión Mayoritaria acoge el planteamiento del Estado y utiliza como fundamento el caso de Ramos Oppenheimer v. Leduc, 103 DPR 342 (1975) porque, según aduce, lo ocurrido allí tiene un cuadro fáctico similar al de autos. Cabe destacar que la única similitud que existe entre uno y otro caso consiste en que en ambos hubo unas carreras de automóviles ilegales en lugares que no estaban destinados para ello. En Ramos Oppenheimer v. Leduc, *supra*, un joven de 14 años murió luego de que este se ubicó dentro de la pista del aeropuerto de Santa Isabel en el preciso momento en que competían los carros. En el caso de epígrafe, cinco personas, observadoras del evento,

---

[28] Cabe resaltar que la Policía de Puerto Rico, dentro del marco de sus funciones, tiene la obligación de "proteger a las personas y a la propiedad, mantener y conservar el orden público (…) prevenir, descubrir, investigar y perseguir el delito y, dentro de la esfera de sus atribuciones, compeler obediencia a las leyes y ordenanzas municipales, y reglamentos que conforme a éstas se promulguen". 25 LPRA sec. 3102.

fallecieron tras ser atropelladas por un vehículo que perdió el control del volante.

Consideramos que el referido caso es distinguible al caso que esta ante nuestra consideración. En Ramos Oppenheimer v. Leduc, *supra*, contrario a lo que ocurrió en este caso, no era previsible que una persona saliera inesperadamente y se colocara justo en medio de la pista en el preciso momento en que competían los carros que allí corrían. Era improbable que en ese caso el agente o funcionario supiera que ese acontecimiento iba a ocurrir. No obstante, en el presente caso, sí era de conocimiento general que se realizaban carreras clandestinas todos los domingos en el barrio San Lorenzo desde hacía varios años y, como cuestión de hecho, ese día se reportó una posible una carrera. Por lo tanto, era previsible que ocurriera un accidente. Así pues, considero que las circunstancias en Ramos Oppenheimer v. Leduc, *supra*, son distintas, por lo que el mismo no es de aplicación con el de autos.

Finalmente, resulta imperativo señalar que, además de optar por no adjudicarle responsabilidad al Estado por los daños causados y sí imputarle negligencia comparada a los jóvenes que murieron en el trágico accidente, una Mayoría de este Tribunal pretende pautar un escrutinio de ocho criterios que aplicarían al momento de evaluar una alegada negligencia del Estado en el ejercicio de su deber de evitar la comisión de delitos. Entendemos que el escrutinio propuesto, lejos de regir los procedimientos

judiciales al amparo del Art. 1802 del Código Civil, le exige a los reclamantes la carga de probar unos requisitos adicionales e innecesarios a los principios generales de responsabilidad civil ya legislados y contenidos en nuestro ordenamiento jurídico.[29] Es decir, al imponer el aludido escrutinio, una Mayoría de este Tribunal empina innecesariamente el camino a los ciudadanos que reclamen daños bajo el fundamento de que el Estado omitió su deber de velar por el cumplimiento de las leyes, toda vez que añade ocho peldaños ajenos a la reiterada normativa vigente en este tipo de pleitos. Ello, trastocando toda una doctrina jurídica carente fundamentos.

Tal y como concluyeron los foros inferiores, aquí no se trata de intervenir con una decisión discrecional administrativa respecto a cómo y dónde el Estado asigna sus recursos policiales, sino del hecho de que existía y

---

[29] Según lo establece la Ley Núm. 104 de 29 de junio de 1955 conocida como Ley de Pleitos contra el Estado, 32 LPRA secs. 3077-3084, la renuncia a la inmunidad soberana opera cuando se cumple con ciertos requisitos. A tales efectos, para prevalecer en una causa de acción de daños y perjuicios basada en actuaciones u omisiones culposas o negligentes de un funcionario hay que establecer: primero, que el causante del daño, debe haber actuado en su capacidad oficial como agente, funcionario o empleado del Estado; segundo, que este actuó dentro del marco de su funciones; tercero, que la actuación fue negligente, no intencional; y cuarto, debe existir una relación causal entre la conducta negligente y el daño. García v. ELA, 163 DPR 800, 811-812 (2005). Véase además, Leyva et al. v. Aristud et al., 132 DPR 489, 510 (1993).

En casos particulares de agentes del orden público, hay que establecer un nexo lógico entre la actuación negligente de la Policía y los intereses del Estado por razón del ejercicio de funciones expresas o implícitas. Sánchez Soto v. ELA, 128 DPR, 497, 506 (1991). Una vez se cumple con estos requisitos, el Estado está sujeto a responsabilidad civil cuando, a través de sus funcionarios es negligente por omisión al incumplir con el deber impuesto por un estatuto o la Constitución de Puerto Rico o de Estados Unidos. Es decir, que el Estado no tomó las medidas estrictas de supervisión sobre aquellas actividades o personas que se podría prever causarían daño. Véase, García v. ELA, supra, y Negrón v. Orozco Rivera, 113 DPR 712 (1983).

existe un deber jurídico por parte del Estado de hacer cumplir las leyes y procurar por la seguridad de sus ciudadanos. Más aun, cuando los funcionarios y agentes del orden público tenían **pleno conocimiento** de las actividades que allí se realizaban y cuyas consecuencias eran razonablemente previsibles. No podemos ignorar el hecho de que continuamente los tribunales estamos revisando las acciones que se presentan en contra del Estado debido a la negligencia de este en la práctica administrativa.

En conclusión, la situación de hechos ante nuestra consideración no presenta circunstancias que justifiquen eximir al Estado de su responsabilidad. Era enteramente previsible, y en mayor grado para la Policía, en contacto día tras día con este tipo de actividad, la posibilidad de que en medio de la celebración de estas carreras clandestinas de vehículos de motor en el Municipio de Morovis ocurriera un trágico accidente como el que en efecto ocurrió. Por lo tanto, actuó correctamente el Tribunal de Apelaciones al confirmar la determinación de foro de primera instancia en cuanto a que los daños alegados por la parte demandante ocurrieron por la negligencia del Estado puesto que sus funciones no actuaron acorde a las leyes y reglamentos aplicables. La Policía optó por no intervenir con el evento lo que claramente demuestra que no actuó como un hombre prudente y razonable.

**II**

Por todo lo anterior, confirmaría el dictamen del Tribunal de Apelaciones que, a su vez, confirma el dictamen del Tribunal de Primera Instancia que declaró con lugar la demanda instada y condenó solidariamente al ELA y al Sr. José M. Class Otero a pagar a los co-demandantes el máximo permitido en la Ley Núm. 104 de 29 de junio de 1955 conocida como la *Ley de Reclamaciones y Demandas Contra el Estado*.[30]

Edgardo Rivera García
Juez Asociado

---

[30] 32 LPRA 3077 *et seq.*