Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **CARLOS MANUEL URRUTIA BRUZÓN Y OTROS**<br><br>Parte recurrida<br><br>v.<br><br>**MUNICIPIO DE GUAYNABO Y OTROS**<br><br>Parte peticionaria | **KLCE202500244**<br><br>CONSOLIDADO CON: | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Caso Núm.: GB20219CV00431<br><br>Sobre:<br><br>**DAÑOS Y PERJUICIOS** |
| **CARLOS MANUEL URRUTIA BRUZÓN Y OTROS**<br><br>Parte apelada<br><br>v.<br><br>**MUNICIPIO DE GUAYNABO Y OTROS**<br><br>Parte apelante | **KLAN202500257** | **APELACIÓN**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Caso Núm.: GB20219CV00431<br><br>Sobre: **CAIDA** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Pagán Ocasio y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparecen ante nos, como peticionarias, las partes demandadas del caso de epígrafe, el Municipio de Guaynabo (Mun. Guaynabo), Optima Seguros (Optima), Caparra Center Associates (Caparra Center) y QBE Insurance Company (QBE). Estas solicitan que revisemos la *"Sentencia Parcial"* del Tribunal de Primera Instancia, Sala de Bayamón, en adelante, TPI-Bayamón, notificada el 2 de octubre de 2024. Mediante esta, el Foro Recurrido adjudicó negligencia contra las peticionarias.

Las partes radicaron sus respectivos petitorios mediante un recurso de *certiorari* y otro de *apelación*. Sin embargo, por la

---

[1] Véase Orden Administrativa OATA-2025-037 del 19 de marzo de 2025, donde se designa al Juez Ángel R. Pagán Ocasio en sustitución de la Juez Grace M. Grana Martínez.

naturaleza del dictamen recurrido por ambas partes, consolidamos los mismos y los acogemos como *certiorari*.

Por los fundamentos que expondremos a continuación, *expedimos* el auto solicitado, lo *modificamos* y *revocamos* en parte.

## I.

El 10 de abril de 2019, Carlos Urrutia Bruzón, en adelante, Urrutia Bruzón o recurrido, su esposa Neriana Vicenty de Cardón y la Sociedad de Bienes Gananciales compuesta por ambos, incoaron una *"Demanda"* por daños y perjuicios en el TPI-Guaynabo contra el Mun. Guaynabo, Optima, Caparra Center, San Patricio Plaza Shopping Center, en adelante, San Patricio Plaza, y QBE.[2] Según la demanda, el 9 de mayo de 2018, Urrutia Bruzón se dirigió a la farmacia Walgreens en San Patricio Plaza. Luego de estacionarse, y bajarse de su vehículo, se encontraba caminando hacia la misma por el paseo peatonal, cuando tropezó y cayó sobre su rodilla izquierda. Urrutia Bruzón fue llevado al hospital, donde fue intervenido quirúrgicamente. Los recurridos arguyeron que el Mun. Guaynabo faltó a su deber de mantener la superficie donde resbaló Urrutia Bruzón, con los materiales adecuados para la fricción requerida en paseos peatonales. Además, aducen que Caparra Center fue negligente al no darle mantenimiento a la porción de la vía pública de la cual se sirven.

Por estos hechos, los recurridos solicitaron la suma de $100,000.00 por los daños y angustias mentales, $20,000.00 para la esposa de Urrutia Bruzón por las angustias mentales sufridas, $30,000.00 por los ingresos dejados de devengar y una suma no menor de $10,000.00 en honorarios de abogado. El 15 de julio de 2019, el Mun. Guaynabo presentó *su "Contestación a la Demanda"*.[3]

---

[2] Apéndice del recurso KLCE202500244, pág. 1.
[3] *Id.*, pág. 6.

Luego de varias instancias procesales que no ameritan ser expuestas, el 16 de junio de 2022 se celebró la Conferencia con Antelación a Juicio.[4] En la misma, el TPI-Bayamón sugirió celebrar una *vista de negligencia*, para que los recurridos presentaran evidencia, y la parte peticionaria contrainterrogara. Estando de acuerdo las partes, la referida vista quedó pautada para el 14 de octubre de 2022. Luego de un re-señalamiento, la vista en cuestión fue finalmente celebrada los días 12 de julio de 2023 y 4 de octubre de 2023.[5]

En la mencionada vista se estipuló que el día de los hechos estaba lloviendo.[6] Urrutia Bruzón testificó sobre la caída que sufrió en San Patricio Plaza. Además, se reprodujo en sala un video sobre el evento. La representación legal de este, intentó insertar como evidencia unas fotos que tomaron su cliente y él.[7] En estas fotos, según los recurridos, surgía el desnivel en la vía peatonal en la que ocurrió el accidente de Urrutia Bruzón. Oponiéndose las partes demandadas, el TPI-Bayamón finalmente las excluyó. Por ello, el abogado del recurrido hizo una oferta de prueba. La única pieza evidenciaria admitida por el Foro Recurrido, además del video, son una serie de fotos del calzado que llevaba Urrutia Bruzón al momento de los hechos. En el segundo día de la vista, el recurrido fue contrainterrogado por las partes demandadas. El Mun. Guaynabo, además, ofreció prueba de impugnación.[8]

Concluido el desfile de prueba, el Mun. Guaynabo y Caparra Center solicitaron la desestimación de la demanda al amparo de la Regla 39.2 (c) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2.[9] La representación legal de Urrutia Bruzón se opuso a la moción de

---

[4] Apéndice del recurso KLCE202500244, pág. 98.
[5] *Id.*, págs. 107 y 119.
[6] *Id.*, pág. 108.
[7] *Id.*, pág. 111.
[8] *Id.*, pág. 517.
[9] *Id.*, págs. 458-475.

desestimación.[10] Luego de escuchar las argumentaciones de las partes, el TPI-Guaynabo declaró la moción de desestimación *"No Ha Lugar"*.[11]

Inconformes, el 19 de octubre de 2023, el Mun. Guaynabo y Optima radicaron una moción de reconsideración.[12] Ese mismo día, Caparra Center y QBE radicaron otra moción de reconsideración.[13] El 31 de octubre de 2023, Urrutia Bruzón se opuso a la reconsideración solicitada por Caparra Center y QBE.[14] Ese mismo día, también se opuso a la súplica de reconsideración del Mun. Guaynabo y Optima.[15]

Posteriormente, el 7 de noviembre de 2023, el Foro Recurrido declaró *"No Ha Lugar"* la solicitud de reconsideración del Mun. Guaynabo y Optima.[16] Por estos hechos, el 5 de diciembre de 2023, el Mun. Guaynabo y Optima presentaron un recurso de *Certiorari* ante nos, impugnando la determinación del *"No Ha Lugar"* del Foro Primario, con relación a la solicitud de desestimación al amparo de la Regla 39.2 (c) de Procedimiento Civil, supra.[17] Sin embargo, mediante *"Resolución"* del 8 de febrero de 2024, este Foro desestimó el recurso por falta de jurisdicción, toda vez que la solicitud de reconsideración de Caparra Center y QBE estaba aún pendiente de resolver por el Foro Recurrido.[18] Finalmente, el 29 de julio de 2024, el TPI-Guaynabo atendió la moción irresuelta de Caparra Center y QBE, y declaró la misma *"No Ha Lugar"*.[19]

Así las cosas, el 28 de agosto de 2024, el Mun. Guaynabo y Optima comparecieron *nuevamente* ante este Tribunal mediante un *"Recurso de Certiorari"*, solicitando que revisemos la denegación de

---

[10] Apéndice del recurso KLCE202500244, págs. 475-485.
[11] *Id.*, pág. 485.
[12] *Id.*, pág. 124.
[13] *Id.*, pág. 140.
[14] *Id.*, pág. 146.
[15] *Id.*, pág. 149.
[16] *Id.*, pág. 164.
[17] *Id.*, pág. 524.
[18] *Id.*, pág. 574. KLCE202301370.
[19] *Id.*, pág. 587.

su solicitud de desestimación. Mediante *"Resolución"* del 17 de diciembre de 2024, denegamos expedir el recurso.[20] Sin embargo, los procesos continuaron en el Foro Recurrido, y el 2 de octubre de 2024, se notificó una *"Sentencia Parcial"* que declaró *"Ha Lugar"* la demanda sobre daños y perjuicios presentada por el recurrido.[21] Por lo tanto, dispuso que las partes peticionarias fueron negligente, "al conocer y tener injerencia en cuanto al desnivel contiguo a la acera que causó el accidente sufrido por el señor Urrutia el día de los hechos al cruzar la Avenida González Giusti mientras se dirigía a la farmacia Walgreens".[22] Por otro lado, también determinó que el peticionario fue negligente al cruzar la calle sin el cuidado debido.[23]

El 16 de octubre de 2024, Caparra Center presentó una *"Moción de Determinaciones Hechos Adicionales, Conclusiones de Derecho & Reconsideración"*.[24] Por su parte, las peticionarias presentaron su propia *"Moción de Reconsideración y Determinaciones Adicionales de Hechos"*.[25] Posteriormente, el 19 de febrero de 2025, el TPI-Guaynabo declaró las mociones *"No Ha Lugar"*, y *"Ha Lugar"* sus respectivas oposiciones.[26]

Así las cosas, el 12 de marzo de 2025, el Mun. Guaynabo y Optima comparecieron ante esta Curia mediante *"Recurso de Certiorari"* impugnando la *"Sentencia Parcial"*, haciendo los siguientes señalamientos de error:

> **Primer Error**: Erró el Tribunal de Primera Instancia al emitir un hallazgo de negligencia contra la compareciente que no se sustenta en la prueba, cometiendo de ese modo grave error en su apreciación y abuso de discreción.
>
> **Segundo Error**: Erró el Tribunal de Primera Instancia al negarse a hacer determinaciones adicionales de hechos que se justificaron en el testimonio y prueba desfilada y negarse

---

[20] Apéndice del recurso KLCE202500244, pág. 597. KLCE202400932.
[21] *Id.*, pág. 607.
[22] *Id.*, págs. 622-623.
[23] *Id.*, pág. 623.
[24] *Id.*, pág. 624.
[25] *Id.*, pág. 640.
[26] *Id.*, pág. 819.

eliminar otras que no se basaban en la prueba desfilada, cometiendo así grave error y abuso de discreción.

**Tercer Error**: Erró el Tribunal de Primera Instancia al imponer solidaridad respecto a la negligencia establecida en la sentencia parcial.

El 17 de marzo de 2025, las peticionarias radicaron una moción informativa en la que solicitaron que ordenáramos al TPI-Guaynabo a elevar un video que obra en su expediente. Ahora bien, mediante *"Resolución"* del 20 de marzo de 2025, concedimos a la parte recurrida hasta el 24 de marzo de 2025 para presentar su escrito en oposición. Por su parte, el 21 de marzo de 2025, el recurrido solicitó una prórroga para presentar su escrito. Mediante *"Resolución"* del 25 de marzo de 2025, atendimos la solicitud de las peticionarias, referente al video que solicitaron se elevara ante nos, declarando la misma *"Ha Lugar".* En la misma *"Resolución"* concedimos la prórroga solicitada por el recurrido, y le concedimos hasta el 28 de marzo de 2025 para presentar su escrito en cumplimiento.

Ahora bien, el 28 de marzo de 2025, Caparra Center y QBE radicaron ante esta Curia una *"Apelación"* impugnando la *"Sentencia Parcial"* del TPI-Bayamón del 2 de octubre de 2024. En su escrito, hizo los siguientes señalamientos de error:

**Primer Error:** Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón en su apreciación de la prueba y declarar Ha Lugar la demanda.
**Segundo Error:** Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón en su apreciación sobre el porciento de distribución de negligencia.
**Tercer Error:** Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón al determinar la existencia de solidaridad.

Mediante *"Resolución"* del 9 de abril de 2025, consolidamos el recurso de *certiorari* presentado por el Mun. Guaynabo y Optima y

la apelación de Caparra Center y QBE, por recurrir del mismo dictamen.

Por otro lado, el 10 de abril de 2025, emitimos otra *"Resolución"* en la que concedimos a Caparra Center y QBE hasta el 7 de mayo de 2025 para la presentación de la transcripción de la prueba oral, con las respectivas indicaciones para exponer las objeciones, el alegato suplementario y la oposición al alegato suplementario. Recibida la prueba oral, y vencidos los términos dispuestos en la *"Resolución"* del 10 de abril de 2025, procedemos a expresarnos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, supra, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios

evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada Regla, expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *IG Builders et al. v. BBVA PR*, 185 DPR 307, 338-339 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.
*BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

### B. Apreciación de la prueba

Es bien sabido que el Foro Primario es el que tiene la oportunidad de ver y observar a los testigos y su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, ademanes, dudas y vacilaciones, e ir formando gradualmente en su conciencia la convicción de si dicen o no la verdad. *Semidey et al. v. Fcia. Belmonte et al.,* 211 DPR 222, 232 (2023); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117,127 (2019); *Pueblo v. Torres Martínez,* 200 DPR 834, 857-858 (2018); *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 746 (2012)*; Argüello v. Argüello,* 155 DPR 62 (2001). Consecuentemente, los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de

instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Barreto Nieves, et al. v. East Coast*, 2024 TSPR 40, 213 DPR ___ (2024); *Semidey et al. v. Fcia. Belmonte et al.,* supra, pág. 232; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846 (2023); *Super Asphalt Pavement Corp. v. AFI y otros,* 206 DPR 803, 820 (2021)*; Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 784 (2020); *Pueblo v. Viruet Camacho,* 173 DPR 563, 584 (2008). *S.L.G. Rodríguez v. Nationwide*, 156 DPR 614, 623 (2002).

El fundamento principal a esta deferencia es que el juzgador del Foro Primario tuvo la oportunidad de observar toda la prueba presentada, y por ende se encuentra en mejor situación que el Tribunal Apelativo para considerarla. *Pueblo v. González Rivera*, 207 DPR 846, 848 (2021); *Argüello v. Argüello*, supra, en la pág. 78.

De esta manera, "la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Barreto Nieves et al. v. East Coast*, supra; *Pueblo v. Hernández Doble*, 210 DPR 850, 865 (2022); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779-780 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 793 (2020). "Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, ***no exista base suficiente que apoye su determinación***". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021). (Énfasis suplido).

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Se exceptúan de la regla de deferencia, las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los

tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). La apreciación de la prueba realizada por el Foro Primario debe ser objeto de deferencia por los tribunales apelativos. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *McConnell v. Palau*, 161 DPR 734, 750 (2004). Como regla general, no se intervendrá con la apreciación de la prueba, las determinaciones de hechos y las adjudicaciones de credibilidad que haga el foro de instancia. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 78-79 (2009); *Trinidad v. Chade*, 153 DPR 280, 292 (2001).

No obstante, aunque el arbitrio del juzgador de los hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Méndez v. Morales*, 142 DPR 26, 36 (1996). Si un análisis integral de la prueba refleja que las conclusiones del tribunal *a quo* están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, éste ha cometido un error manifiesto. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ramírez Ferrer v. Conagra Foods P.R.,* 175 DPR 799, 811 (2009).

### C. Negligencia comparada

El derogado Artículo 1802 del Código Civil de Puerto Rico de 1930, en adelante, Código Civil, 31 LPRA sec. ant. 5141,[27] establecía que el que por acción u omisión causare un daño a otro, interviniendo culpa o negligencia, estaría obligado a reparar el daño causado. Una acción bajo el referido Artículo exige tres (3) requisitos esenciales: (1) realidad del daño sufrido; (2) nexo causal entre el

---

[27] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado estatuto, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado Código.

daño y la acción u omisión de otra persona, y (3) el acto u omisión es culposo o negligente. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010); *López v. Porrata Doria,* 169 DPR 135, 150 (2006); *García v. ELA,* 163 DPR 800, 809 (2005); *Pons v. Engebretson,* 160 DPR 347, 354 (2003); *Ortiz Torres v. K & A Developers, Inc.,* 136 DPR 192, 197 (1994); *Soc. Gananciales v. G. Padín Co., Inc.,* 117 DPR 94, 106 (1986).

Ahora bien, para que exista responsabilidad como consecuencia de una omisión hay que considerar si: (1) existe o no un deber jurídico de actuar por parte de quien se alega que cometió el daño; (2) si de haberse realizado el acto omitido se hubiere evitado el daño. *Pérez et al. v. Lares Medical et al.,* supra pág. 977; *Soc. Gananciales v. G. Padín Co., Inc.,* supra, pág. 106. El Tribunal Supremo ha definido la culpa o negligencia como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. *Nieves Díaz v. González Massas*, supra, pág. 844; *Pérez Hernández v. Lares Medical Center,* supra pág. 977; *Cruz Flores et al. v. Hosp. Ryder et al., supra,* pág. 484. En cuanto al requisito de relación causal, el estándar aplicable es el de causalidad adecuada, la cual se define como la condición que ordinariamente produce el daño, según la experiencia general. *Nieves Díaz v. González Massas,* supra, pág. 844; *López v. Porrata Doria,* supra, págs. 151-152.

La relación causal es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González* Massas, supra, págs. 844-845. Este concepto de la causa presupone que la ocurrencia del daño sea previsible dentro del curso normal de los acontecimientos. *López v. Porrata Doria, supra*, pág. 152.

El deber de indemnizar requiere que haya un nexo causal entre el daño y el hecho que lo originó, pues solo se indemnizarán los daños que sean consecuencia del hecho que obliga a la indemnización. *Estremera v. Inmobiliaria Rac. Inc.,* 109 DPR 852, 856 (1980). Así pues, un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del suceso -mirándolo retrospectivamente- parece ser la consecuencia razonable y común de la acción u omisión de que se trate. *Santiago v. Sup. Grande,* 166 DPR 796, 818 (2006). Por otro lado, en casos de esta naturaleza, existe la defensa de *negligencia comparada.* El precitado Artículo 1802 del Código Civil de Puerto Rico de 1930, supra, sec. 5141, disponía que "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".

Con relación a la *negligencia comparada,* el Tribunal Supremo de Puerto Rico ha establecido que su efecto es atenuar la responsabilidad de la parte demandada, tomando en cuenta "el grado de negligencia desplegado por la parte demandante que contribuye a la producción de sus propios daños". *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 178 (2008). Es decir, la misma no pretende eximir de responsabilidad a la parte demandada, sino reducir la misma. *SLG Colón-Rivas v. ELA,* 196 DPR 855, 866 (2016); *Colón Santos v. Coop. Seg. Mult. P.R.,* supra, pág. 178. Véase, además, H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* 2da ed., San Juan, Pubs. JTS, 1986, Vol. 1, pág. 410. La *negligencia comparada* tiene el efecto de atenuar la responsabilidad de la parte demandada de acuerdo con el grado de negligencia desplegado por la parte demandante que contribuye a la producción de sus propios daños. *Colón Santos v. Coop. Seg. Mult. PR,* supra, pág. 178; *Quiñones López v. Manzano Posas,* 141 DPR 139, 176 (1996).

Esta modalidad tiende a individualizar las indemnizaciones por daño, colocando el rigor económico en las partes conforme a la proporción de su descuido y negligencia. *De León, Hernández v. Hosp. Universitario*, 174 DPR 393, 399 (2008). La doctrina de negligencia comparada requiere que el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, establezca el porcentaje de responsabilidad o negligencia que corresponde a cada parte y reduzca la indemnización del demandante de conformidad con la distribución de responsabilidad efectuada. *SLG Colón-Rivas v. ELA*, supra, pág. 865. Así, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada es necesario "analizar y considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante". *Quiñones López v. Manzano Pozas*, supra, pág. 176. Véase, además, *SLG Colón-Rivas v. ELA*, supra, págs. 865-866.

### D. Responsabilidad solidaria

La palabra "solidaridad" proviene del latín *in solidum,* la cual se define como la totalidad de una suma. A. Blánquez Fraile, *Diccionario latino-español, español-latino*, Barcelona, Ed. Ramón Sopena, 1985, T. II, pág. 1460. A esos efectos, el Código Civil dispone lo siguiente:

> La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria.

> Código Civil, supra, ant. sec. 3101.

Cuando existe una pluralidad de deudores en una obligación, esta se puede clasificar de naturaleza mancomunada o solidaria. *Pérez et al. v. Lares Medical et al.,* supra, pág. 977; *Quílez-Velar et*

*al. v. Ox Bodies, Inc.*, 198 DPR 1079, 1084 (2017); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012). En la obligación mancomunada, cada deudor tiene que cumplir con su parte de la deuda que le corresponda de manera independiente mientras que, en las obligaciones solidarias, cada deudor tiene el deber de cumplir íntegramente con la totalidad de la obligación. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, pág. 375. En nuestro ordenamiento jurídico, la solidaridad no se presume. *Id,* pág. 376. Un acreedor con deudores solidarios, a la luz del derogado Código, podía entablar una causa de acción contra cualquiera de ellos. Para ello, se disponía lo siguiente:

> El acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente. Las reclamaciones entabladas contra uno no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada la deuda por completo.

> Código Civil, supra, ant. sec. 3108.

### III.

Los peticionarios recurren ante esta Curia haciendo varios señalamientos de error. En esencia, arguyen que el TPI-Bayamón se equivocó al concluir que las peticionarias incurrieron en negligencia, y que responden solidariamente. Por estar todos los errores íntimamente relacionados, los atenderemos en conjunto.

Con relación los argumentos sobre el presunto abuso de discreción del TPI-Bayamón al determinar que existe negligencia comparada entre las partes, y en su análisis de la distribución de dicha negligencia, entendemos que a las peticionarias *les asiste la razón.*

En su *"Sentencia Parcial"*, el Foro Recurrido hace siete (7) observaciones sobre la negligencia del recurrido. Para sustentar la *negligencia comparada,* a los efectos de imponer alguna sobre Urrutia Bruzón, subraya que este no tomó las medidas necesarias

para caminar seguramente por el paseo peatonal de la Avenida González Giusti. Expresa que este no tomó precauciones ante el presunto desnivel del suelo, dado que el mismo estaba mojado por lluvia. Por otro lado, añade que el recurrido "insistió en dirigirse hacia la farmacia teniendo conocimiento de que la lluvia era muy fuerte, no usó un paraguas y [el] calzado que utilizó ese día tenía la suela algo desgastada".[28] Incluso, durante su testimonio, el recurrido admitió que los zapatos que calzaba ese día eran de suela lisa.[29] Sobre este asunto, el Foro Primario, en su *"Sentencia Parcial"*, determinó que, aunque de goma, "[l]a suela del zapato de vestir del señor Urrutia tenía cierto desgaste".[30] Surge del video en evidencia que, no empece a las condiciones del tiempo, el suelo resbaladizo y su calzado, Urrutia Bruzón caminó de prisa para cruzar la calle.

En su dictamen, el Foro recurrido hizo una serie de determinaciones de hechos en las que concluyó que "[e]l señor Urrutia para ir al Walgreens tenía que cruzar por la avenida".[31] Sin embargo, observamos en el video que, para llegar a la farmacia, el recurrido tenía la opción de tomar el ascensor contiguo al estacionamiento, y llegar al otro lado del centro comercial por el puente peatonal interior. Esto, sin necesidad de cruzar la calle mojada del exterior. Por estos hechos, aunque sostenemos la determinación de *negligencia comparada* sobre Urrutia Bruzón, la modificamos para incrementarla a cincuenta por ciento **(50%).**

Ahora bien, con relación a las peticionarias, el Foro Primario concluyó que la causa principal del accidente se debió a un desnivel en el paseo peatonal, con el cual se tropezó Urrutia Bruzón. En su testimonio, Urrutia Bruzón declaró que su pie izquierdo se "ancló" en el desnivel, provocando que su pie derecho resbalara.[32] El TPI-

---

[28] Apéndice del recurso KLCE202500244, pág. 622.
[29] *Id.*, pág. 283.
[30] *Id.*, pág. 612.
[31] *Id.*
[32] *Id.*, pág. 278.

Bayamón, a esos efectos, expone en sus determinaciones de hechos que, tanto el Mun. Guaynabo como Caparra Center, son responsables solidariamente por ese desnivel.

Sobre el Mun. Guaynabo, el TPI-Bayamón concluyó que este era responsable por tener "jurisdicción sobre el área del accidente y un deber de supervisar los trabajos realizados en esa zona y asegurarse de que el mismo esté libre de peligros".[33] Por otro lado, con relación a Caparra Center, dictaminó que este es responsable solidariamente por los daños, ya que fue "quien realizó trabajo de construcción en dicha avenida y tenía que asegurarse que la zona no tuviera imperfecciones riesgosas".[34] Sin embargo, nuestra evaluación de la prueba oral nos compele a concluir que, contrario a la determinación del Foro Recurrido, el Mun. Guaynabo no incurrió en negligencia. En su *"Demanda Enmendada"*, Urrutia Bruzón sostiene que el Mun. Guaynabo responde por los daños sufridos, ya que no supervisó si el material utilizado para la construcción de la vía peatonal cumplía con el "coeficiente de fricción requerido para el tránsito de peatones" y porque su "responsabilidad de mantener la vía pública, era indelegable".[35] En el contrainterrogatorio del recurrido, la peticionaria lo confrontó con lo siguiente:

> P: Mire, usted no tiene prueba que acredite que el Municipio no le daba mantenimiento a esa área. ¿Verdad que no la tiene?
> R: *No soy ingeniero.*
> P: No es ingeniero. Pero tampoco tiene un... prueba pericial que acredite que allí no había mantenimiento, ¿verdad que no? Ni mostró documentos al Tribunal que se pudieran haber obtenido como parte del descubrimiento de prueba que le dijeran a usted que el Municipio falló en darle mantenimiento a esa área. ¿Verdad que usted no lo tiene?
> R: *No, no lo tengo.*[36]

> (Énfasis suplido).

---

[33] Apéndice del recurso KLCE202500244, pág. 613.
[34] *Id.*
[35] *Id.*, pág. 3.
[36] Apéndice del recurso KLCE202500244, pág. 435.

Lo cierto es que no obra en autos, ni surge de la transcripción, evidencia sobre la alegada responsabilidad que tenía el Mun. Guaynabo de supervisar el material utilizado por Caparra Center, para la construcción del paseo peatonal ni de darle mantenimiento al mismo. A tenor con lo anterior, concluimos, que la negligencia comparada surge entre Urrutia Bruzón y Caparra Center, con un cincuenta por ciento (50%) cada uno de responsabilidad.

Finalmente, en cuanto a los errores sobre solidaridad, en virtud de lo dispuesto en este dictamen, los mismos *no se cometieron*. El TPI-Bayamón había determinado que el Mun. Guaynabo y Caparra Center respondían solidariamente por los daños sobrevenidos a Urrutia Bruzón. Como esbozáramos previamente, la solidaridad se impone cuando hay pluralidad en la distribución de responsabilidad. Como corolario de lo anterior, este Tribunal concluye que, ante el recurrido, solo responde Caparra Center, por lo que no hay solidaridad que adjudicar entre este y el Mun. Guaynabo.

**IV.**

Por los fundamentos esbozados, *expedimos* el recurso, *revocamos* el dictamen recurrido a los efectos de eximir al Mun. Guaynabo en *su totalidad de responsabilidad ante el recurrido*, y, a consecución, *modificamos* el mismo para imponer un cincuenta por ciento **(50%)** de responsabilidad, en concepto de *negligencia comparada*, a **Caparra Center** y **Urrutia Bruzón**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones