Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| DAISY ZABALA AGOSTO<br><br>Apelante<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS; MAPFRE PRAICO INSURANCE COMPANY (MAPFRE)<br><br>Apelado | TA2025AP00673 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2022CV03939<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2026.

Comparece Daisy Zabala Agosto (en adelante, señora Zabala Agosto o apelante) mediante un recurso de apelación para solicitarnos la revisión de la *Sentencia* emitida el 15 de septiembre de 2025, y notificada el 16 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina.[1] Mediante la *Sentencia* apelada, el foro de instancia declaró *No Ha Lugar* la demanda interpuesta y la desestimó con perjuicio.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El caso del título tuvo su origen, el 8 de diciembre de 2022, cuando la señora Zabala Agosto interpuso una *Demanda* sobre daños y perjuicios contra la Autoridad de Acueductos y Alcantarillados (AAA) y MAPFRE PRAICO Insurance Compay

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 82.

(MAPFRE) (en conjunto, parte apelada).[2] La misma fue contestada el 3 de febrero de 2023.[3] Al año siguiente, el 8 de agosto de 2023, la señora Zabala Agosto incoó una *Demanda Enmendada*.[4] Adujo que durante el paso de los huracanes Irma y María por Puerto Rico su residencia sufrió daños. Alegó, además, que sufrió desbordamientos continuos de aguas negras desde el mes de septiembre del año 2017, lo que le ocasionó pérdida de bienes muebles y daños a su salud. Imputó negligencia a la AAA por no corregir la alegada causa del problema. Esbozó que, pese a múltiples gestiones y querellas, la AAA no le resolvió la situación y que MAPFRE tampoco atendió su reclamación. A tenor, solicitó al foro de instancia que declarara Ha Lugar la *Demanda* presentada y condenara a la parte apelada a pagar una suma no menor de un millón de dólares ($1,000.00.00), para reparar la causa de los continuos desbordamientos de aguas, y que se le impusiera el pago de una suma no menor de cincuenta mil dólares ($50,000.00) por concepto de honorarios de abogado.

En reacción, el 16 de octubre de 2023, la parte apelada presentó su *Contestación a demanda enmendada*.[5] Admitió algunas alegaciones, negó otras. Por otro lado, la parte apelada presentó sus defensas afirmativas y solicitó la desestimación de la demanda.

Luego de varios trámites procesales innecesarios pormenorizar, el 29 de agosto de 2024, las partes presentaron el *Informe de conferencia preliminar entre abogados*.[6] Subsiguientemente, la vista sobre conferencia con antelación a juicio fue celebrada el 4 de septiembre de 2024.[7] Producto de la vista

---

[2] SUMAC TPI, a la Entrada Núm. 1.
[3] *Íd.,* a la Entrada Núm. 8.
[4] *Íd.,* a la Entrada Núm. 24.
[5] *Íd.,* a la Entrada Núm. 30.
[6] *Íd.,* a la Entrada Núm.48.
[7] *Íd.,* a la Entrada Núm. 50.

celebrada el 4 de septiembre de 2024, el tribunal de instancia notificó la *Minuta* de la misma.[8]

Así las cosas, el 1 de abril de 2025, las partes presentaron una *Moción conjunta en cumplimiento con orden sobre la prueba documental estipulada.*[9] En el escrito, notificaron una serie de piezas de evidencia estipuladas en cuanto a autenticidad, pertinencia y contenido. La misma fue desglosada como: (i) prueba documental conjunta;[10] (ii) prueba documental de la parte apelante,[11] y (iii) prueba documental de la parte apelada.[12]

Luego, el 25 de abril de 2024, compareció la parte apelada mediante *Moción informativa y en cumplimiento con orden,*[13] informando haber cargado al SUMAC TPI su prueba documental como anejo al escrito.[14] Por su parte, en esa misma fecha, la parte apelante presentó una *Moción en cumplimiento de orden sobre prueba documental.*[15]

De ahí, se celebró el juicio en su fondo del 5 al 8 de mayo de 2025.[16]

---

[8] SUMAC TPI, a la Entrada Núm. 50. Notamos que el volante de notificación de esta *Minuta* contiene una fecha de emisión no relacionada a la *Minuta* en cuestión. No obstante, el volante forma parte de la Entrada Núm. 50 y está unida al expediente como el volante de notificación de esta *Minuta.* La Minuta corresponde a la vista del 4 de septiembre de 2024, y, según se desprende de los autos, fue transcrita el 2 de octubre de 2024, y notificada el 22 de octubre de 2024.

[9] SUMAC TPI, a la Entrada Núm. 61.

[10] *Íd.* La prueba estipulada conjunta consistió en cinco (5) piezas de evidencia, enumeradas del I al V, sobre las cuales, de forma individual, se estipularon hechos.

[11] SUMAC TPI, a la Entrada 61. La prueba estipulada conjunta consistió en 14 piezas de evidencia, enumeradas del 1 al 14, sobre las cuales, de forma individual, se estipularon hechos.

[12] SUMAC TPI, a la Entrada 61. La prueba estipulada conjunta consistió en tres (3) piezas de evidencia, identificadas de la A-C, sobre las cuales, de forma individual se estipularon hechos.

[13] SUMAC TPI, a la Entrada Núm. 66.

[14] *Íd.,* la prueba documental fue identificada tal y como en el SUMAC TPI, a la Entrada Núm. 61, entiéndase, EXH. A-C. Además, la parte apelada incluyó cuatro (4) identificaciones nombradas IDENT A-D.

[15] SUMAC TPI, a la Entrada Núm. 71. La prueba documental fue identificada tal y como en el SUMAC TPI, a la Entrada Núm. 61, entiéndase, 1 al 14. Además, la parte apelante incluyó cuatro (4) identificaciones nombradas ID. 1 al 42.

[16] SUMAC TPI, a la Entrada Núm. 73. De la *Sentencia* apelada, se desprende que el primer día de juicio fue el 5 de mayo de 2025. Revisada la pantalla de señalamientos del SUMAC TPI no se desprende que se hubiese celebrado vista alguna el 5 de abril de 2025, sino el 5 de mayo de 2025. Véase, además, el SUMAC TPI, a las Entradas Núm. 74 y 76-78.

La prueba testifical por la parte apelante consistió en el testimonio de: la propia apelante, la señora Zabala Agosto; Nitza Delgado Alejandro (señora Delgado Alejandro); el ingeniero mecánico Jorge Ledón Webster (ingeniero Ledón Webster), y Carlos Picart Miranda (señor Picart Miranda). Por otro lado, la prueba testifical de la parte apelada consistió en el testimonio de: Manuel Marín Alicea (señor Marín Alicea); Héctor Ramos Moczó (señor Ramos Moczó), y Yanira Cosme Faría (señora Cosme Faría).

Durante el juicio, se presentó abundante prueba documental, lo cual fue detallado en el dictamen apelado.[17] Sobre el particular, el foro *a quo* hizo referencia a las piezas de evidencia que surgen del SUMAC TPI, a las Entradas Núm. 61, 66 y 71. De igual forma, el tribunal de instancia detalló aquellas piezas de evidencia las cuales fueron admitidas durante el juicio.[18]

De ahí, el 15 de septiembre de 2025, notificada al día siguiente, el foro de instancia emitió la *Sentencia* apelada.[19] Mediante su dictamen, declaró *No Ha Lugar* la demanda incoada y la desestimó con perjuicio.

Como parte del dictamen apelado, el foro incluyó las siguientes once (11) determinaciones de hecho estipuladas producto de la conferencia con antelación a juicio, celebrada el 4 de septiembre de 2024, y las cuales desprenden, además, de la *Minuta* notificada el 22 de octubre de 2024.[20] En línea de lo anterior, el foro de instancia también consignó setenta (70) determinaciones de hechos también estipulados, haciendo referencia a cierta prueba documental estipulada.[21] Por otro lado, también se hizo referencia a

---

[17] SUMAC TPI, a la Entrada Núm. 82, págs. 4-14.

[18] *Íd.,* a la Entrada Núm. 82, págs. 14-16.

[19] *Íd.,* a la Entrada Núm. 82.

[20] *Íd.*, a la Entrada Núm. 50. Véase, además el dictamen apelado, en el SUMAC TPI, a la Entrada Núm. 82, págs. 2-4.

[21] SUMAC TPI, a la Entrada Núm. 82, págs. 5-14. **Primero**, el foro *a quo* incorporó los siguientes hechos estipulados con relación a la prueba documental estipulada conjunta: (i) del Exhibit I, nueve (9) determinaciones de hechos; (ii) del Exhibit II (1-4), dos (2) determinaciones de hechos; (iii) del Exhibit III, tres (3) determinaciones de hechos; (iv) del Exhibit IV, dos (2) determinaciones de hechos;

cuál fue la prueba sobre la cual se hizo referencia durante el juicio.[22]
Por último, el foro *a quo* consignó veinte (20) determinaciones de hechos, apreciadas durante la celebración del juicio en su fondo.[23] De modo que, la *Sentencia* apelada cuenta con ochenta y una (81) determinaciones de hechos estipuladas y veinte (20) determinaciones de hechos emitidas que fueron producto del juicio en su fondo, las cuales incorporamos por referencia a esta sentencia.[24]

En la *Sentencia,* la primera instancia judicial concluyó, en síntesis, que, producto de los daños ocurridos a la residencia como consecuencia del paso de los huracanes Irma y María por Puerto Rico, la aquí apelante sufrió de mucha ansiedad, incomodidad y molestia. En esencia, la residencia perdió las ventanas y una porción del techo del segundo nivel, causando que entrara agua a la misma. De igual forma, tras subir los niveles del agua de mangle que se encontraba posterior a la residencia, hubo desbordamiento de dichas aguas. Además, por el baño ubicado en el primer nivel de la residencia salieron aguas usadas (negras).

Por otro lado, el referido foro concluyó que la AAA es responsable de proveer a los ciudadanos un servicio adecuado de alcantarillado sanitario y de mantener y mejorar las instalaciones

---

y (v) del Exhibit V, dos (2) determinaciones de hechos. **Segundo**, el tribunal apelado incorporó los siguientes hechos, también estipulados, de la prueba documental estipulada de la parte apelante: (i) del Exhibit 1, cuatro (4) determinaciones de hechos; (ii) del Exhibit 2, cuatro (4) determinaciones de hechos; (iii) del Exhibit 3, siete (7) determinaciones de hechos; (iv) del Exhibit 4, dos (2) determinaciones de hechos; (v) del Exhibit 5, tres (3) determinaciones de hechos; (vi) del Exhibit 6, tres (3) determinaciones de hechos; (vii) del Exhibit 7, tres (3) determinaciones de hechos; (viii) del Exhibit 8, tres (3) determinaciones de hechos; (ix) del Exhibit 9, tres (3) determinaciones de hechos; (x) del Exhibit 10, tres (3) determinaciones de hechos; (xi) del Exhibit 11, tres (3) determinaciones de hechos; (xii) del Exhibit 12, tres (3) determinaciones de hechos, (xiii) del Exhibit 13, tres (3) determinaciones de hechos; (xiv) del Exhibit 14, seis (6) determinaciones de hechos. **Tercero,** el tribunal apelado incorporó nueve (9) determinaciones de hechos también estipulados de la prueba documental estipulada de la parte apelada identificada como Exhibit A. Los anteriores hechos estipulados totalizan setenta (70).

[22] SUMAC TPI, a la Entrada Núm. 82, págs. 14-16. Se trata de treinta (30) piezas de evidencia, de las cuales diecinueve (19) fueron admitidas durante el juicio, el resto era prueba documental estipulada, según se hizo referencia.

[23] SUMAC TPI, a la Entrada Núm. 82, págs. 16-21.

[24] *Íd.,* págs. 5-14.

de agua y alcantarillado. Empero, el foro *a quo* concluyó que, a base de la prueba apreciada, no surgió que los daños alegados por la apelante fuesen atribuibles a falta de diseño o negligencia en la instalación de los tubos que son responsabilidad de la AAA ni prueba de que la situación fuese atribuible a la falta de mantenimiento por parte de dicha agencia. De igual forma, tampoco quedó demostrado, de la prueba creída, que la AAA hubiese fallado en proveer la atención adecuada a la situación de la apelante.

En desacuerdo, el 1 de octubre de 2025, la apelante interpuso una *Moción solicitando reconsideración y de enmiendas o determinaciones iniciales o adicionales*.[25] Solicitó que se enmendaran ciertas determinaciones de hechos y que se reconsiderara el dictamen emitido. En reacción, el 13 de noviembre de 2025, la AAA y MAPFRE incoaron una *Moción en cumplimiento de orden*.[26] Peticionaron que se denegara lo solicitado por la apelante. En respuesta, mediante *Resolución,* emitida el 13 de noviembre de 2025, y notificada el 20 de noviembre de 2025, el foro de instancia denegó la solicitud interpuesta por la apelante.

En desacuerdo aún, el 15 de diciembre de 2025, compareció la señora Zabala Agosto mediante un recurso de apelación, en el cual esbozó la comisión de los siguientes siete (7) errores:

> A. Erró el Honorable Tribunal de Primera Instancia al determinar que no hay evidencia de que el problema de empozamiento que ocurría dentro de la tubería que discurría desde el registro de inspección hasta el sistema de alcantarillado localizado en la calle frente a la residencia de la Apelante, fuera como consecuencia de la falta de mantenimiento de la AAA e imputable a dicha Apelada. (Págs. 20 y 27 de la Sentencia [Ent. 82]).
>
> B. Erró el Honorable Tribunal de Primera Instancia al determinar que no hay evidencia de que el agrietamiento y colapso de la tubería sanitaria que discurre desde el registro sanitario en la propiedad de la Apelante hasta la tubería sanitaria localizada en la calle sea imputable a la AAA. (Pág. 21 de la Sentencia [Ent. 82]).
>
> C. Erró el Honorable Tribunal de Primera Instancia al concluir que, como cuestión de hecho, no hay evidencia clara

---

[25] SUMAC TPI, a la Entrada Núm. 83.
[26] *Íd.,* a la Entrada Núm. 87.

y creíble de que la Autoridad de Acueductos haya actuado con negligencia al no haber instalado correctamente o por haber aceptado del desarrollador de Urb. Mansiones de Vistamar Marina, el tubo que discurre desde el registro de inspección de la residencia de la Sra. Zabala hasta el sistema de la calle, así como la pieza de conexión con desperfectos. (Págs. 20 y 27 de la Sentencia [Ent. 82]).

D. Erró el Honorable Tribunal de Primera Instancia al determinar que no hay evidencia creída por el Tribunal, estableciendo que la Autoridad falló en proveer la atención adecuada a la situación de la Apelante. (Pág. 27 de la Sentencia [Ent. 82]).

E. Erró el Honorable Tribunal de Primera Instancia al determinar que la Apelante no realizó gestión afirmativa para mitigar los daños a la propiedad, como mover las cosas a un lugar seguro. (Pág. 18 de la Sentencia. [Ent. 82]).

F. Erró el Honorable Tribunal de Primera Instancia al determinar que el 6 de diciembre de 2017, la Autoridad de Acueductos destapó la acometida frente a la residencia de la Apelante. (Pág. 19 de la Sentencia. [Ent. 82]).

G. Erró el Honorable Tribunal de Primera Instancia al incluir en la Sentencia varias Determinaciones de Hechos Apreciados por el Tribunal que no están sostenidas con la prueba presentada.

En igual fecha, la apelante interpuso una *Moción al amparo de las Reglas 19, 21 y 76 para autorizar la presentación de transcripción por transcriptor privado*. En esta, adjuntó la transcripción de la prueba oral del juicio en su fondo y esbozó que no sería necesario presentar un alegato suplementario. De ahí, mediante *Resolución* emitida el 16 de diciembre de 2025, concedimos a la parte apelada hasta el 29 de diciembre de 2025, para informar si estipulaba la transcripción de la prueba oral o para presentar sus objeciones. Por otro lado, concedimos a la parte apelada hasta el 15 de enero de 2025, para presentar su alegato en oposición.

EL 29 de diciembre de 2025, compareció la parte apelada mediante *Moción en cumplimiento de orden*. Esbozó que al momento no tenían ningún reparo con la transcripción, sin embargo, solicitó se le concediera hasta la fecha de la presentación del alegato en oposición para informar cualquier error u objeción que pudiese surgir de la misma. Mediante *Resolución*, emitida el 8 de enero de 2026, dispusimos que, de no informarse objeciones a la fecha de la

presentación del alegato en oposición, entenderíamos que la transcripción de la prueba oral quedaría estipulada.

El 15 de enero de 2026, compareció la parte apelada mediante *Alegato de la parte apelada.* Conviene mencionar que no se desprende que la parte apelada hubiese presentado objeciones a la transcripción de la prueba oral, por lo que se entiende como estipulada.  Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

**II**

### A. La Responsabilidad Civil por Daños

El Artículo 1802 del Código Civil de Puerto Rico de 1930 (Código Civil de 1930) le impone el deber a toda persona de no causar daño a otra mediante un acto u omisión culposa o negligente.[27] A su vez, el referido artículo establece la obligación de reparar los daños causados en los que medie culpa o negligencia.[28] Ahora bien, para que surja la responsabilidad civil extracontractual al amparo del Artículo 1802, deben concurrir los siguientes tres (3) elementos: (i) un daño; (ii) una acción u omisión negligente o culposa, y (iii) la correspondiente relación causal entre ambos.[29]

El concepto *culpa* del Artículo 1802 es infinitamente abarcador, tanto como lo suele ser la conducta humana. A esos efectos, la culpa debe evaluarse con amplitud de criterio.[30] Esta, se ha definido como la falta del debido cuidado al no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las

---

[27] Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141 (derogado). El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 5311 *et seq.* Para fines de este caso, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[28] Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141 (derogado).

[29] *Rivera v. S.L.G. Díaz,* 165 DPR 408, 421 (2005).

[30] *Rivera v. S.L.G. Díaz,* supra, a la pág. 422; *Santini Rivera v. Serv. Air, Inc.,* 137 DPR 1, 8 (1994); *Reyes v. Sucn. Sánchez Soto,* 98 DPR 305, 310 (1970).

mismas circunstancias.[31] Entiéndase que, para que ocurra responsabilidad, la persona debe de haber omitido prever las consecuencias de una determinada acción o inacción.[32] Por su parte, el daño es "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra".[33]

Es menester enfatizar que, en nuestro ordenamiento jurídico, la relación causal que debe existir entre la acción u omisión culposa o negligente y el daño se rige por la doctrina de la causalidad adecuada, la cual propone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[34] Ello, implica que la ocurrencia del daño debe ser previsible dentro del curso normal de los acontecimientos.[35] Consecuentemente, recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios.[36]

**B. La Apreciación de la Prueba y Deferencia Judicial**

Como es sabido, tanto el ejercicio discrecional que efectúa el Tribunal de Primera Instancia de apreciación de la prueba como las determinaciones de hecho que esgrime están revestidas de confiabilidad y merecen gran deferencia.[37] Ello, toda vez que es el foro primario quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[38] Esto, al contrario del Tribunal de Apelaciones, quien

---

[31] *Rivera v. S.L.G. Díaz,* supra, a la pág. 421; *Ramos v. Carlo,* 85 DPR 353, 358 (1962).

[32] *Montalvo v. Cruz,* 144 DPR 748, 756 (1998).

[33] *López v. Porrata Doria,* 169 DPR 135, 151 (2006).

[34] *Colón, Ramírez v. Televicentro de P.R.,* 175 DPR 690, 707 (2009).

[35] *López v. Porrata Doria,* supra, a la pág. 152.

[36] *SLG Colón-Rivas v. ELA,* 196 DPR 855, 864 (2016).

[37] *Trinidad v. Chade,* 153 DPR 280, 291 (2001), citando a *Pueblo v. Torres Rivera,* 137 DPR 630 (1994).

[38] *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

cuenta únicamente con "récords mudos e inexpresivos.[39] Así, pues, en nuestro sistema de justicia, la discreción judicial permea la evaluación de la prueba presentada en los casos y controversias.[40]

Por lo anterior, conviene mencionar que las decisiones discrecionales que toma el foro primario no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[41] Un tribunal de justicia incurre en un abuso de discreción cuando el juez, sin fundamento para ello: (i) no toma en cuenta e ignora en la decisión que emite un hecho material importante que no podía ser pasado por alto; (ii) concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o (iii) no toma en cuenta todos los hechos materiales e importantes, descarta los relevantes, así como los sopesa y calibra livianamente.[42]

Como corolario de lo anterior, nuestro Tribunal Supremo ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[43] Se ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala, e incluso antes de que se someta prueba alguna.[44] Con relación al error manifiesto, un juzgador incurre en este cuando, de un análisis de la totalidad de la evidencia, este Tribunal de Apelaciones queda convencido de que las

---

[39] *S.L.G. Rivera Carrasquillo v. A.A.A*, 177 DPR 345, 356 (2009); *Trinidad v. Chade*, supra, a la pág. 291.
[40] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).
[41] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).
[42] *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).
[43] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).
[44] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[45] Igualmente, se podrá intervenir con la determinación del tribunal de instancia cuando la valoración de la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[46]

No obstante, lo anterior, cabe destacar que, el Alto Foro ha resuelto que, en instancias en las cuales las determinaciones de hecho que realice el foro primario estén basadas en prueba pericial o documental, el tribunal revisor estará en la misma posición para revisar la prueba.[47] Por tanto, en dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[48]

Huelga señalar que, aunque según vimos, la apreciación de la prueba no está exenta de toda revisión, si la actuación del tribunal de instancia no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio de este foro, que es a quien corresponde la dirección del proceso.[49] Por ende, los foros apelativos solo podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que de esta surjan serias dudas, razonables y fundadas. Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo.[50]

## C. El Establecimiento de Hechos por parte del Juzgador

Respecto a la evaluación de la prueba, la Regla 110 de Evidencia establece que el juzgador de los hechos tiene el deber de

---

[45] *Dávila Nieves v. Meléndez Marín,* supra, a la pág. 772.
[46] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *González Hernández v. González Hernández*, supra, a la pág. 777.
[47] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219.
[48] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219*; Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001); *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[49] S*ierra v. Tribunal Superior*, supra, a la pág. 572.
[50] *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14.

"evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados".[51] Asimismo, la aludida regla, establece que "[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza".[52] Más bien, se requiere que la totalidad de la prueba haga más probable cierta conclusión.[53]

Cónsono con lo anterior, la evaluación de la prueba incluye la credibilidad y el valor probatorio que el juzgador le haya dado a la misma. En lo particular, "[l]a función del tribunal al analizar si la evidencia es susceptible de ser creída sólo requiere determinar si la evidencia puede ser creída por una persona razonable y de conciencia no prevenida, sin entrar a dirimir la credibilidad que amerita la prueba presentada".[54] Incluso, según la Regla 110 (d) de Evidencia, basta al juzgador de los hechos la credibilidad a un solo testigo presentado, por una parte, para dar por acontecido tal hecho.[55] Asi, pues, "[l]a juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente".[56] Sobre este particular, nuestro Tribunal Supremo de Puerto Rico estableció que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz".[57] Por lo tanto, en este contexto, los

---

[51] 32 LPRA Ap. VI, R. 110.
[52] *Íd.*
[53] *Pereira Suarez v. Jta. Dir. Cond.*, 182 DPR 485, 529 (2011).
[54] *Pueblo v. Colón, Castillo,* 140 DPR 564, 582 (1996).
[55]  32 LPRA Ap. VI, R.110.
[56] *Íd.*, R. 110 (e).
[57] *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

jueces son quienes están en mejor posición de aquilatar la prueba testifical desfilada, ya que tienen la oportunidad de apreciar de cerca las alocuciones de los testigos, mientras observan sus gestos, contradicciones, dudas, manerismos y titubeos.[58]

### III

En el presente caso, la apelante, mediante sus siete (7) señalamientos de error, nos invita a concluir que el tribunal de instancia incidió al desestimar su causa de acción con perjuicio. En su recurso de apelación, plantea, en síntesis, que el foro primario erró al determinar que la AAA no fue responsable de la obstrucción del tubo por el cual discurrían aguas negras, lo cual causó el desbordamiento del baño del primer piso de su residencia. Por estar íntimamente relacionados discutiremos el *primer*, *segundo* y *tercer* error en conjunto, así como el *cuarto* y *sexto* error. Sin embargo, el *quinto* y *séptimo* señalamiento de error los discutiremos por separado.

Antes de adentrarnos en la discusión de los errores señalados, puntualizamos que esta Curia toma conocimiento de los eventos que ocasionaron los Huracanes Irma y María. Por lo que, de ninguna manera, se entienda que la decisión que aquí tomamos reniega el sufrimiento y los daños, los cuales no tenemos dudas que fueron padecidos por la señora Zabala Agosto durante los aludidos eventos naturales. Ahora bien, siendo este un tribunal de derecho, nuestro análisis debe siempre estar guiado por las facultades que se nos han encomendado, así como que debe tomar en cuenta la deferencia que se le concede a la primera instancia judicial, por ser el foro que se encargara de aquilatar prueba.

---

[58] *Pueblo v. Toro Martínez*, 200 DPR 834, 857-858 (2018); *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011).

Establecido lo anterior, cabe resaltar que, según expusimos en la relación de hechos previa, el caso de marras inició cuando la señora Zabala Agosto presentó una *Demanda* en contra de la AAA y MAPFRE la cual, posteriormente, fue enmendada. En su pliego, alegó que, durante el paso de los Huracanes Irma y María, su residencia sufrió daños a consecuencia de desbordamientos continuos de aguas negras. Arguyó que la AAA fue negligente al no corregir la causa de problema, al igual que MAPFRE, quien no atendió su situación.

Tras varias instancias procesales, las cuales incluyeron, pero no se limitaron, a la celebración del juicio en su fondo, en el cual se recibió prueba testifical y amplia prueba documental, siendo esta última en su mayoría estipulada por las partes, el tribunal *a quo* emitió la *Sentencia* que nos ocupa. En esta, el referido foro concluyó que no se demostró que los daños alegados por la apelante fuesen atribuibles a la negligencia o falta de mantenimiento de la AAA. Así, pues, desestimó la causa de accion presentada por la apelante.

Inconforme, la apelante presentó una oportuna solicitud de reconsideración, la cual fue declarada sin lugar. Aún en desacuerdo con el curso decisorio, acudió ante esta curia.

En su *primer*, *segundo* y *tercer* señalamiento de error la apelante plantea, en suma, que el foro primario falló al determinar que no hubo evidencia de que la AAA hubiese actuado con negligencia, de forma que se le pueda imputar responsabilidad por la situación de aguas negras sufridas desde el paso de los Huracanes Irma y María. No estamos de acuerdo.

De entrada, conviene mencionar que el ejercicio discrecional que efectúa el tribunal de instancia de apreciación de la prueba, así como de determinar hechos, está revestido de gran confiabilidad y

merece deferencia por parte de este tribunal.[59] Esto, puesto a que es el foro primario el que tuvo la oportunidad de ver, escuchar y valorar los testigos, así como sus lenguajes no verbales.[60] Por tanto, no se debe sustituir el criterio del tribunal de instancia a menos que se demuestre que están presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[61] También se podrá variar lo dispuesto por el foro primario cuando la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o creíble.[62] Dicho lo anterior, es de ver que, si la actuación del tribunal de instancia no está desprovista de bases razonables, ni perjudica los derechos sustanciales de alguna de las partes, debe prevalecer el criterio de este foro.[63]

Tras haber examinado minuciosamente los autos ante nuestra consideración, así como las posiciones de las partes, la transcripción de la prueba oral y la prueba admitida, coincidimos que, en este caso, no se encuentra presente ninguna circunstancia que nos autorice a variar el criterio del tribunal *a quo*. Nos explicamos.

Según expusimos en nuestra exposición doctrinal previa, para que surja responsabilidad civil extracontractual es necesario que concurran los siguientes tres (3) elementos: (i) un daño; (ii) una acción u omisión negligente o culposa, y (iii) la correspondiente relación causal entre ambos.[64] Particularmente, la culpa y la negligencia se han definido como la falta del debido cuidado al no anticipar y prever las consecuencias racionales de un acto, o la

---

[59] *Trinidad v. Chade*, supra, a la pág. 291.

[60] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *Meléndez Vega v. El Vocero de PR*, supra, a la pág. 142.

[61] *Coop. Seguros Múltiples de P.R. v. Lugo*, supra, a la pág. 208; *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14; *Sierra v. Tribunal Superior*, supra, a la pág. 572.

[62] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *González Hernández v. González Hernández*, supra, a la pág. 777.

[63] *Sierra v. Tribunal Superior*, supra, a la pág. 572.

[64] *Rivera v. S.L.G. Díaz*, supra, a la pág. 421.

omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias.[65] De otra parte, precisa destacar que, en nuestro ordenamiento jurídico, rige la doctrina de la causalidad adecuada, de forma que la causa no es "toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[66] Por último, conviene mencionar que a la parte perjudicada es a quien le corresponde establecer mediante preponderancia de prueba todos los elementos necesarios para demostrar que la parte promovida incurrió en responsabilidad civil extracontractual, cosa que en este caso no ocurrió.[67]

La aquí apelante ancla su argumento, respecto a que la AAA fue negligente, principalmente, porque su perito, el ingeniero Ledón Webster, atestiguó durante su testimonio que, a su juicio, la AAA era responsable de la rotura a la tubería, puesto a que, entre otras cosas, debió haberle dado limpieza y mantenimiento al sistema.[68] Enfatiza, además, que el referido perito no fue impugnado por la parte apelante.

En mérito del anterior argumento, cabe destacar que cuando el juzgador evalúa la prueba para establecer los hechos que han quedado demostrados, no se exige que este cuente con un grado de prueba que produzca absoluta certeza, si no, más bien, que, de la totalidad de la prueba, este puede producir cierta conclusión.[69] A esos efectos, al analizar la evidencia solo se requiere que el juzgador analice "si la evidencia puede ser creída por una persona razonable y de conciencia no prevenida, sin entrar a dirimir la credibilidad que

---

[65] *Rivera v. S.L.G. Díaz*, supra, a la pág. 421; *Ramos v. Carlo*, supra, a la pág. 358.

[66] *Colón, Ramírez v. Televicentro de P.R.*, supra, a la pág. 707.

[67] *SLG Colón-Rivas v. ELA*, supra, a la pág. 864.

[68] Transcripción de la prueba oral (TPO) del 7 de mayo de 2025, a la pág. 98, líneas 6-9.

[69] Regla 110 de Evidencia, *supra*; *Pereira Suárez v. Jta. Dir. Cond.*, supra, a la pág. 529.

amerita la prueba presentada".[70] Por tanto, puede bastar con un solo testigo para dar por acontecido un hecho.[71] Asimismo, es importante tener en cuenta que "[l]a juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente".[72]

Pese a que, a juicio del ingeniero Ledón Webster, la AAA fue responsable de la rotura, este aceptó durante su testimonio que no hizo ningún estudio para corroborar los dos (2) informes que realizó el plomero Carlos Ortiz.[73] Ello, puesto que, según expresó, él no hace estudios, porque para eso están los plomeros.[74] Peor aún, el referido ingeniero manifestó que nunca se reunió con el plomero.[75] En vista de lo anterior, colegimos que sus conclusiones se basaron en las dos (2) visitas que hizo a la apelante en su residencia y la información que recibió de esta sobre los desbordamientos de agua.[76] Conviene mencionar, además, que este admitió que en los dos (2) informes que se le entregaron del aludido plomero, este último no indicó que había una pendiente invertida y, aunque acentuó que se encontró una pieza sanitaria con problemas, no especificó cual era el problema, ni mencionó, específicamente, que había una conexión mal hecha.[77] También, admitió que, en el segundo informe del referido plomero, se expresa que hay un desnivel en la calle que impide que los suelos tengan una mejor descarga, sin embargo, no sugiere que no hay descarga de agua.

---

[70] *Pueblo v. Colón, Castillo*, supra, a la pág. 582.
[71] Regla 110 de Evidencia, *supra*.
[72] Regla 110 (e) de Evidencia, *supra*.
[73] TPO del 7 de mayo de 2025, a la pág. 100, líneas 9-13. Véase, además, TPO del 7 de mayo de 2025, a la págs. 99- 100, líneas 24 y 1-4, respectivamente.
[74] TPO del 7 de mayo de 2025, a la pág. 100, líneas 9-13
[75] *Íd.,* a la pág. 99, líneas 5-9.
[76] *Íd.,* a la pág. 78, líneas 7-11. Véase, además, TPO del 7 de mayo de 2025, a la pág. 99, líneas 10-17
[77] TPO del 7 de mayo de 2025, a la págs. 100- 101, líneas 14-24 y 1-22, respectivamente.

Por otro lado, precisa acentuar que el señor Ramos Moczó, testigo y plomero licenciado de la AAA, testificó que la tubería afectada es susceptible a cuando suceden "movimientos telúricos, de temblores o hay hundimiento por nivel freático, nivel freático es cuando hay lluvia, eventos atmosféricos que la marejada del mar sube; entonces el agua sube, [. . .] en las lagunas, en las quebradas, pero ya una vez vuelve otra vez las marejadas, ahí toman su lugar, esa agua vuelve y baja; y muchas veces erosiona el terreno."

Todo lo antes expuesto, unido a la demás prueba documental y testimonial admitida, hace evidente que el juzgador de instancia no abusó de su discreción al determinar que la AAA no incurrió en negligencia respecto a la situación de aguas negras sufrida por la apelante.

Aunque lo anteriormente esbozado hace innecesario pasar juicio sobre la procedencia de los demás errores señalados, ya que estamos de acuerdo con la determinación tomada por la primera instancia judicial. Nos parece importante discutir los planteamientos de la apelante y reseñar la razón por la cual no tienen ninguna consecuencia sobre la determinación tomada por el tribunal *a quo*.

En su *cuarto* y *sexto* señalamiento de error la apelante plantea que el tribunal de instancia incidió al no determinar que la AAA fue negligente al no proveer la atención adecuada a su situación, así como al determinar que el 6 de diciembre de 2017, la referida agencia destapó la acometida frente a su residencia, puesto a que, en realidad, se personó a destapar la tubería en una fecha posterior.

Pese a que la señora Zabala Agosto hace los anteriores señalamientos, en su recurso indica que, del año 2017 al 2023, ocurrieron cuatro (4) desbordamientos, siendo el último el 3 de junio de 2023, y que, en cada una de las ocasiones, la AAA acudió a su

residencia a destapar la tubería sanitaria.[78] Por otro lado, aunque la apelante insiste que cuando ocurrió el primer desbordamiento la AAA acudió en el mes de febrero de 2018, y no el 6 de diciembre de 2017, se desprende que durante el juicio se confrontó a la señora Zabala Agosto con la foto que había tomado del día en el cual la AAA se personó a destapar la tubería sanitaria, luego del primer desbordamiento. Aunque esta insistió en que la referida agencia no acudió a resolver el problema hasta febrero de 2018, surge del registro digital de la referida foto que esta fue tomada en la fecha del 14 de diciembre de 2017. Si bien la apelante adujo que la foto estaba manipulada, no presentó evidencia a esos efectos. Esta Curia juzga que, si la AAA recibió la notificación del primer desbordamiento el 4 de diciembre de 2017, y luego, acudió para atender el problema el día 14, del mismo mes y año, esto no implica de ninguna manera una tardanza que amerita imputar negligencia a la AAA. Tampoco surge de la prueba admitida que, en los siguientes tres (3) desbordamientos que ocurrieron en la residencia de la apelante, la referida agencia se haya tardado excesivamente para asistirle en su reclamo.

Dicho lo anterior, pasamos a discutir lo esbozado en el *séptimo* señalamiento de error expresado por la apelante. En este, arguye que el tribunal de instancia incluyó en su *Sentencia* varias determinaciones de hechos que no están sostenidas por la prueba presentada. En particular, las determinaciones de hecho número 4 y 7.

En cuanto a la determinación de hechos número 4, la apelante arguye que esta no se sustenta puesto a que la misma expresa que el propósito del registro sanitario "es recibir y canalizar las aguas residuales (negras) de una casa hacia la red de alcantarillado o

---

[78] Recurso de apelación, a la pág. 19.

sistema de tratamiento de agua que opera la Autoridad de Acueductos y Alcantarillados [. . .]." Sin embargo, lo anterior, va en contra de lo atestiguado por su perito, quien indicó que el propósito del registro sanitario es para la limpieza y mantenimiento de la tubería. Por otro lado, en cuanto a la determinación de hecho número 7, la apelante entiende que debe ser enmendada puesto a que esta indica que perdió una parte de su techo y que las aguas de los mangles entraron a su residencia ocasionando desbordamiento de agua, lo cual, según alega, no es correcto.

Ante los argumentos de la apelante conviene mencionar que, según adelantamos, cuando el juzgador evalúa la prueba para establecer los hechos que han quedado demostrados, no se exige que este cuente con un grado de prueba que produzca absoluta certeza, sino, más bien que, de la totalidad de la prueba, este puede producir cierta conclusión.[79] Puntualizamos que, en este caso, el perito de la apelante no fue el único testigo conocedor en la materia, además, fueron admitidos en evidencia unos informes del plomero Carlos Ortiz. Siendo así, el hecho de que la determinación número 7 no refleje la opinión de su perito en cuanto al propósito del registro sanitario, no significa que el juzgador de hechos abusó de su discreción, sino, más bien, que la determinación expresa lo que este razonablemente concluyó, según la prueba admitida. Por otra parte, pese a que la apelante afirma que esta no perdió parte del techo y que el agua de los mangles no entró a su residencia, ocasionando así algún desbordamiento. Lo cierto es que esta atestiguó que la referida residencia fue seriamente afectada por los huracanes, al punto que su casa quedó a la intemperie y que el segundo nivel de la casa se quedó sin techo.[80] Además, manifestó, durante su

---

[79] Regla 110 de Evidencia, *supra*; *Pereira Suárez v. Jta. Dir. Cond.*, supra, a la pág. 529.
[80] TPO del 7 de mayo de 2020, a la pág. 32, líneas 13-24.

testimonio, que con el huracán entró mucha vegetación, agua sucia y animales muertos. Particularmente, resaltó que entró mucha agua.

En vista de lo antes expuesto, entendemos que el tribunal de instancia no erró en sus determinaciones de hecho. Ahora bien, aún si juzgáramos lo contrario, entendemos que las determinaciones señaladas en nada inciden sobre lo concluido por el foro primario.

Por último, huelga subrayar que en su *quinto* señalamiento de error la apelante plantea que el tribunal incidió al determinar que ella no mitigó los daños a la propiedad. Dado a que esta Curia está de acuerdo con el tribunal *a quo*, en que no se presentó prueba que permita imputar negligencia a la AAA, no hace ningún efecto el hecho de que esta haya mitigado los daños o no.

Por todo lo antes expresado, concluimos que no se cometieron ninguno de los siete (7) errores esgrimidos por la apelante. En consecuencia, nos vemos a forzados a confirmar la *Sentencia* apelada.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones